W. G. MIZELL v. G. A. McGOWAN et als.

*Action for Damages—Draining Swamp Lands—Natural Water Courses—Upper and Lower Land Owners.*

1. The privilege or easement of the upper tenant to carry off the surface water in its natural course, under reasonable limitations, and the subserviency of the lower tenant to this easement, are the natural incidents to the ownership of land.

2. The owners of swamps, whose waters naturally flow into natural water courses, can make such canals as are necessary to drain them of the water naturally flowing therein, although in doing so the flow of water in the natural water-course is increased and accelerated so that the water is discharged on the land of an abutting owner.

CIVIL ACTION, tried before *Graham, J.,* and a jury, at December Term, 1896, of PITT Superior Court.    The facts are stated in the opinion of the court.    From a judgment for the plaintiff the defendants appealed.

*Mr. James E. Moore,* for plaintiff.
*Messrs. Jarvis & Blow* and *Blount & Fleming,* for defendants (appellants).

FAIRCLOTH, C., J.:  The plaintiff instituted this action for damages to his land by reason of ditches or canals cut by the defendants, collecting large quantities of water and discharging the same upon plaintiff's land in unusual quantities and with greater rapidity and force than before.

By the statement of the case we are informed that Broad creek, about 30 or 40 feet wide at its mouth, empties into Tar river, Moyes run into Broad creek, and that Baldwin, Canon and Cooper swamps naturally enter into Moyes run; that plaintiff's farm, alleged to be damaged, is bounded on the east and north by Broad creek and Moyes run; that prior to the cutting of the canal complained of the waters of Moyes run never overflowed plaintiff's land, but since then they have, in ordinary rains, overflowed and damaged plaintiff's lands; that in high freshets the waters of Tar river backed up and overflowed plaintiff's land, before and since the cutting of the canal; that Moyes run and Broad creek "are natural water courses; that Moyes run is a swamp two or three hundred yards wide, with a well defined water course running through it and emptying into Broad creek;" that the waters on the upper swamp lands, owned by the defendants, naturally flowed into Moyes run, and some of the defendants cut the canal "for clearing and cultivating said lands, and have cleared and are cultivating the same and have used said canal for the

purpose of draining the surface waters from their lands into Moyes run and that prior to cutting said canal the said Baldwin swamp was a natural depression or swale 200 or 300 yards wide, in which was no water course through which the said surface waters, flowing from said lands, naturally drained into Moyes run: that the said swamp, through which said canal was cut, was a natural drainway and drained into Moyes run."

The nature of Cannon and Cooper swamps was the same as Baldwin swamp. There is no allegation of negligence or unskillfulness in constructing the ditches or canal, nor is the question of damages for diverting water on the plaintiff's land before us. The sole act laid for damages is that the defendants, in the manner above stated, have discharged the waters with more force and rapidity than the natural flow and thereby damaged plaintiff's property. This is a difficult and delicate question in all similar actions. The natural condition of the eastern part of the State makes it so. The people and the legislatures at an early day saw at once this difficulty. It was a matter of serious concern how to utilize these most valuable properties without ruin to the servient tenants. The agricultural interest of that part of the State demanded a remedy, and in 1795 the "Drainage" and "Mill" acts were passed, now found in the Code, Sections 1997 and 1846, and several acts since 1883. In the east it is well known that there are hundreds of thousands of flat surface swamp lands, which cannot be relieved of the ordinary waters and made useful for living and cultivation without artificial canals or ditches leading into some creek or river, necessarily passing through intervening lands of riparian owners, and if these canals could be cut only by permission of the owners of the outlets, then vast areas would forever remain unpopulated, uncultivated and valueless to those who bought them from the State.

These "Drainage" and "Mill" acts are therefore of public value to the present and future ages.

The rights of parties under these legislative acts, however, do not affect the present question, and we express no opinion as to whether the plaintiff could have availed himself of these acts under the conditions above stated. He selects his common law remedy upon the facts before cited.

The defendants asked the court to charge the jury that if they find from the evidence that Broad creek and Moyes run are natural water courses and that the waters of the upper swamps naturally flow therein, and were susceptible of drainage for agricultural purposes, then the defendant had a right to make such canals in these swamps as were necessary to drain them of the water naturally falling thereon, although in so doing the flow of water in Moyes run was thereby increased and accelerated, and the flow of water was increased on the plaintiff's land. This prayer embraces the substance of all the prayers. His Honor modified the prayer by saying "provided he does not thereby damage said land." Defendant excepted.

We think his Honor should have given the defendants' prayer in substance without the proviso. A water course is well defined by Angel on Watercourses, Section 4 (7th Ed.), and the evidence in this case shows that Broad creek and Moyes run are natural and well defined watercourses, according to that definition. This question has been much discussed in many courts. The surface of the earth is naturally uneven, with inequality of elevation. The upper and lower holdings are taken with a knowledge of these natural conditions, and the privilege or easement of the upper tenant to carry off the surface water in its natural course, under reasonable limitations, and the subserviency of the lower tenant to this easement are the natural

120—18

incidents to the ownership of the soil. The lower surface is doomed by nature to bear this servitude to the superior and must receive the water that falls on and flows from the latter. The servient tenant cannot complain of this, because *aqua currit et debet currere ut solebat.*

The upper owner cannot divert and throw water on his neighbor, nor the latter back water on the other with impunity. *Sic utere tuo, ut alieum non laedas.* This rule, however, cannot be enforced in its strict letter, without impeding rightful progress and without hindering industrial enterprise. Minor individual interest must sometimes yield to the paramount good. Otherwise the benefits of discovery and progress in all the enterprises of life would be withheld from activity in life's affairs. "The rough outline of natural right or liberty must submit to the chisel of the mason that it may enter symmetrically into the social structure." Under this principle the defendants are permitted not to divert, but to drain their lands, having due regard to their neighbor, provided they do not more than concentrate the water and cause it to flow more rapidly and in greater volume down the natural streams through or by the lands of the plaintiff. This license must be conceded with caution and prudence.

This question was well considered and decided in *Waffle* v. *N. Y. Cen. R. Co.*, 53 N. Y., 11; *Hughes* v. *Anderson*, 68 Ala., 280; *Peck* v. *Harrington*, 109 Ill., 611. The same question has frequently been incidentally remarked upon by this court. It was fully considered and decided and authorities cited in *Staton* v. *R. Co.*, 109 N. C., 337; *Jenkins* v. *R. Co.*, 110 N. C., 438.

*Porter* v. *Durham*, 74 N. C., 767, was a case solely for diverting water from its natural course and throwing it on the plaintiff. That question was reserved by the court and is not before us. We need not consider the question of

evidence in the view we take.    There was error in refusing
the defendants' prayer for instruction on the question we
have considered.

New trial.