W. G. MIZZELL v. G. A. McGOWAN and Wife, LAURA A. McGOWAN, *et al.*

(Decided December 12, 1899.)

*Watercourse—Drainage—Upper and Lower Tenants.*

1. The privilege or easment of the upper tenant to carry off the surface water in its *natural* course under reasonable limitations, and the subserviency of the lower tenant to this easement, are the natural incidents to the ownership of the soil.

2. Neither a corporation, nor an individual, can divert water from its natural course so as to damage another. *They may increase and accelerate, but not divert.  Hocutt v. Railroad,* 124 N. C., 214.

3. The upper owner can not *divert* and throw water on his neighbor, nor the latter back water on the other, with impunity.

·. CIVIL ACTION for alleged damages in diverting from its natural course and discharging water upon lands of plaintiff, tried before *Moore, J.,* at March Term, 1899, of the Superior Court of PITT County.

Same case reported in 120 N. C., 134. A severance of the defendants was allowed, and G. A. McGowan has since died.

There was verdict and judgment in favor of defendant Laura A. McGowan. Plaintiff appealed.

The charge of the Court, to which plaintiff excepted, is quoted in the opinion.

DOUGLAS, J., writes the opinion.

FAIRCLOTH, C. J., writes dissenting opinion.

*A. M. Moore,* and *Aycock & Daniels,* for appellant.
*Jarvis & Blow,* and *J. L. Fleming,* for appellee.

DOUGLAS, J. This is a civil action in which the complaint, after setting out ownership and possession, alleges as follows:

"2. The defendants, by means of ditches and canals cut by them, have wrongfully and unlawfully collected large quantities of water and discharged it upon the lands in unusual quantities and with greater rapidity and force than before.

"3. That defendants, by reason of ditches and canals cut by them, have wrongfully and unlawfully *diverted* from its natural course large quantities of water, and discharged it upon the lands of the plaintiff."

The defendants, after denying all the allegations of the complaint, further answer as follows: "That on the . . . . day of August, 1882, by a certain deed executed by the plaintiff and others to these defendants, the said defendants acquired the right to convey the waters referred to in the complaint from their lands and through the lands of the plaintiff and the other grantors in said deed, a copy of which said deed is attached hereto and made a part of this answer."

This part of the answer, with the deed referred to, and another written agreement, were offered by the plaintiff as evidence on the trial for the purpose of showing the defendants' connection with the ditches. It appears that Mrs. L. A. McGowan is the only defendant remaining in the action. The issues and answers thereto were as follows:

1. Is plaintiff the owner of and in possession of the lands described in the complaint? Yes.

2. Did Mrs. Laura A. McGowan wrongfully and unlawfully divert any water from its natural channel and discharge it upon the land of the plaintiff? No.

3. What damage, if any, has plaintiff sustained by reason of the wrongful diversion of said water? None.

4. What damage, if any, has plaintiff sustained by reason of the wrongful collection of water, and its discharge with greater force and rapidity upon plaintiff's land? None.

The following is all of the charge that appears in the record:

The Court instructed the jury as to the different phases of the case and, among other things, charged the jury as follows, to-wit: "The owners of lands drained by a watercourse may change and control the natural flow of the surface water thereon, and by ditches and otherwise accelerate the flow or increase the volume of water which reaches the stream; and if he does this in the reasonable use of his own premises he exercises only a legal right and incurs no liability to a lower proprietor. But a landowner can not concentrate and discharge into the stream the surface water of his land in quantities beyond the natural capacity of the watercourse, to the damage of the lower riparian owners.

"Therefore, it being admitted by the plaintiff that Broad Creek and Moye's Run are natural watercourses, and that the water of Cooper, Cannon and Baldwin swamps, or at least a

portion thereof, naturally flow into Moye's Run, if you shall find from all the evidence in this case that the lands of said swamps were susceptible of drainage for agricultural purposes, then the defendants had the right to make such canals in these swamps as were necessary to drain them of the water naturally falling thereon, although in so doing the flow of water in Moye's Run was thereby increased and accelerated, and the flow of water was increased on the plaintiff's land, if you shall find that Moye's Run was capable of receiving such increased flow of water and carrying it on toward Tar River."

The Court also charged the jury as follows:

"If you find that the defendants, by means of the Parker's Chapel canal, or otherwise than by means of the canal in Moye's Run, drained as much water from Baldwin's Swamp as they diverted into Moye's Run; if you find that they diverted water from its natural course into Moye's Run, then no damage resulted from such diversion, and you will so find."

(The plaintiff excepted to the foregoing direction to the jury.)

The Court also told the jury that there was no evidence which connected the defendant L. A. McGowan with any diversion of water in Cooper or Cannon swamps, if there was any diversion; and that they could not consider the evidence of the diversion of water in those swamps, but must restrict their inquiries to Baldwin's Swamp.

(The plaintiff duly excepted to this direction of the jury.)

There were several exceptions to the testimony, some of which may be good; but, as they are not very clearly expressed, we will not consider them, as we are compelled to order a new trial for error in the charge of the Court.

This case was here before, being reported in 120 N. C., 134. The opinion therein rendered becomes, as far as it goes, the law of the case. Among other things, it says: "The

defendants asked the Court to charge the jury that, if they find from the evidence that Broad Creek and Moye's Run are natural watercourses, and that the waters of the other swamps naturally flow therein, and were susceptible of drainage for agricultural purposes, then the defendants had a right to make such canals in these swamps as were necessary to drain them of the water naturally falling thereon, although in so doing the flow of water in Moye's Run was thereby increased and accelerated, and the flow of water was increased on the plaintiff's land.   This prayer embraces the substance of all the prayers.   His Honor modified the prayer by saying 'provided he does not thereby damage said land.'   Defendants excepted.   We think his Honor should have given the defendant's prayer, in substance, without the proviso.   A watercourse is well defined by Angell on Watercourses, sec. 4 (7th Ed.), and the evidence in this case shows that Broad Creek and Moye's Run are natural and well-defined watercourses according to that definition.   This question has been much discussed in many courts. The surface of the earth is naturally uneven, with inequality of elevation.   The upper and lower holdings are taken with a knowledge of these natural conditions, and the privilege or easement of the upper tenant to carry off the surface water in its *natural* course under reasonable limitations, and the subserviency of the lower tenant to this easement are the natural incidents to the ownership of the soil. The lower surface is doomed by nature to bear this servitude to the superior, and must receive the water that falls on and flows from the latter.   The servient tenant can not complain of this, because *aqua currit et debet currere ut solebat.* The upper owner can not *divert* and throw water on his neighbor, nor the latter back water on the other with impunity.

*   *   *   Under this principle the defendants are permitted *not to divert* but to drain their land, having due regard

to their neighbor, provided they do not more than *concentrate the water and cause it to flow more rapidly and in greater volume down the natural stream through or by the lands of the plaintiff."* We have italicized such words as peculiarly apply to the case as it now stands, which differs only from the former case on appeal in that the issue of *diversion* is clearly raised in the pleadings and proof. The case seems to have been tried upon the theory that the defendant caused ditches to be cut, whereby water was diverted to the land of the plaintiff; but that she claimed the right to do so either from some power in the deed set up in the answer, or some supposed compensation arising from an old ditch which carried off some part of the water that might otherwise help to flood the plaintiff's land. This old ditch, existing from a time whereof the memory of living man runneth not to the contrary, had no connection whatsoever with the ditches cut by the defendant; nor does it appear to have owed either its origin or its maintenance to any act of the defendant. Even if it had, it would not change the principle, which is thus briefly stated in *Hocutt v. Railroad,* 124 N. C., 214, 219: "It is now well settled that neither a corporation nor an individual can divert water from its natural course so as to damage another. *They may increase and accelerate, but not divert."* We must stand by the rule thus laid down, but can not extend its application. In itself it frequently works a necessary hardship, as naturally much of the water that falls in a swamp remains there or is carried off by evaporation, while the remainder flows off so slowly as generally not to overtax the natural outlets. While giving to the owner of the higher land the full benefit of his natural easement, we can not permit him to go beyond it under the plea that he or somebody else has cut an independent ditch somewhere else that is supposed to counterbalance the injury he has done by

the unlawful diversion of water.   To do so would destroy the principle itself, and open up an endless series of defenses confusing in their tendencies and largely speculative in their nature.   A party may acquire an additional easement by grant and in some cases by condemnation with adequate compensation.   *Beach v. Railroad,* 120 N. C., 498.   In the case at bar, the defendant seemed to rely in her answer upon some such easement conveyed in the deed she set out, but did not press that defense upon the trial.   We presume her reason for not doing so was because the deed provided that such ditches should begin at tidewater, whereas the evidence tended to show that they did not reach tidewater.   It may be that the agreement,even if carried out in good faith,did not cover the locality where the waters were diverted.   In any event, the verdict seemed to depend upon that part of his Honor's charge holding that if the defendant had,by some other means,drained as much water from Baldwin Swamp as she diverted into Moye's Run, the plaintiff could not recover.   In this there is substantial error.   Of course, if the defendant had drained so much water from Baldwin's Swamp that what remained, together with the diverted waters, would not have exceeded the capacity of Moye's Run, the plaintiff would not have been damaged and no cause of action would have arisen.   But such was not the case, as it appears that the plaintiff suffered substantial damage.

New trial.

FAIRCLOTH, C. J., dissenting.   I am unable to agree with the majority of the Court in this case.   This action was brought against six defendants, including Mrs. Laura A. McGowan.   She is the widow of G. A. McGowan, who died since suit brought.   For some reason, no one was put on trial except Mrs. McGowan.   There is a mass of evidence applicable to the conduct of all the defendants.   I shall not trouble

myself with the evidence, for the reason, after reading it, I find there is no evidence against Laura A. McGowan. The only issue submitted as to her, was, whether she had diverted water from its natural channel and discharged it on the lands of the plaintiff.

The action is not brought upon alleged breach of contract referred to in the opinion, but it is an action of tort. The trial shows that the question referred to the waters of Baldwin Swamp, the allegation being that the defendant Laura had, by cutting ditches, etc., thrown some of those waters on the plaintiff's land. There is no evidence that she did so. The jury so found. His Honor did not charge that there was any such evidence, and the opinion of this Court does not recite that there was any such evidence. The allegation is denied and the proof fails. If it be assumed that there was an error in the charge, I fail to see why a new trial should be ordered as to Laura A. McGowan, who is not shown to have taken any part in the alleged tortious act. One of plaintiff's witnesses testified: "I think that the ditch which carries the water from the basin to Baldwin Swamp was cut bv Billy McGowan, and was widened and deepened by George McGowan." The agreement referred to allowed defendants to cut and drain "to the mouth of the five-foot canal, known as the Baldwin canal, cut in the summer of 1878," the date of the agreement being August 1, 1882.