WILEY J. LASSITER v. NORFOLK AND CAROLINA RAILROAD
COMPANY.

(Decided May 15, 1900.)

*Diverting Water on Land—Damages to Crops—Permanent
Damages—Judgment—Statute of Limitations—Act of
1893, Chapter 153, and Act 1895, Chapter 224.*

1. Where the jury found that the defendant wrongfully diverted and
   ponded water on plaintiff's lands, causing injury thereby, (2)
   That the amount of permanent injury was $90; (3) That the
   damage to the crops for three years next preceding the action
   was $60:  *Held,* that plaintiff was entitled to judgment for dam-
   ages to crops in addition to the permanent damages.
2. The settled rule is that:  Neither a corporation, nor an individual
   can divert water from its natural course so as to damage another.
   They *may increase and accelerate, but not divert.*
3. By the Act of 1893, chap. 153, amended by Act of 1895, chap. 224,
   actions for damages occasioned by the construction of railroads
   are to be commenced within five years after cause of action occurs,
   and the jury shall assess the entire amount of damages suffered
   by the party aggrieved.  The statute does not begin to run until
   the damage is done.

CIVIL ACTION for damages for injury to land and crops of
plaintiff by wrongfully diverting water upon his land, tried
before *Allen, J.,* at November Term, 1899, of BERTIE
Superior Court.

. Upon issues submitted the jury found that the defendant
wrongfully diverted and ponded water on plaintiff's land,
causing injury thereby; that the damage for permanent injury
to the land was $90, and the damage for three years next pre-
ceding the action was $60.  His Honor rendered judgment
in favor of plaintiff for $90 only, and he excepted and
appealed.

*Mr. Francis D. Winston,* for appellant.
*Mr. George Cowper,* for appellee.

DOUGLAS, J.    This is an action brought to recover damages for the unlawful diversion of water on to the lands of the plaintiff, who claimed damages for his yearly injury for three years next preceding the bringing of the action, and consented "that all of the damage done to said land, past, present and future, may be estimated and recovered in this action." The defendant denied the diversion and damage, and pleaded the usual statutes of limitation. It does not, however, appear to have relied upon any of these statutes, as it tendered no issue as to any of them. There are only two exceptions appearing in the record, one to a special instruction given at the request of the defendant and the other to the judgment. The former does not appear to have hurt the plaintiff, and his exception is inconsistent with his prayer for judgment on the third issue.

The judgment is as follows: "This cause coming on at this term of the court to be heard by the Court and a jury, duly sworn and empaneled, all the parties being before the Court, and the following issues submitted to the jury having been answered by them as set forth, at the end of each: 1. Did the defendant wrongfully and unlawfully pond and divert water on and upon the lands of plaintiff as alleged in the complaint, causing injury to the plaintiff thereby? Answered, "Yes." 2. What amount of permanent damage was done said land by reason of such wrong and injury? Answered, "$90.00." 3. What amount of damage, if any, was done to the crops thereby for the three years next preceding the bringing of this action? Answered. "$60.00."

"Now it is adjudged that the plaintiff recover of the defendant the sum of $90, with interest thereon from November 6,

1899, till paid, and the cost of this action, to be taxed by the clerk."

The plaintiff excepted to the refusal of the Court to give judgment for the yearly damages found by the jury in the third issue. In such refusal we think there was error. There was no objection to the submission of the issue, which we think was entirely proper, and the Court did not pretend to set aside the finding thereon. Indeed, it does not appear that any motion was made to set aside the verdict in any particular. The defendant seemed willing to take its chances upon the third issue, as it requested the following special instruction, which was given by the Court over the objection of the plaintiff, to-wit: "That there is no evidence to be considered by the jury of any damage to the crops on the land during the three years before bringing this action except such as was caused by the diminished productiveness of the land caused by the permanent damage, and the jury shall assess no damage in answer to the third issue, except such as come from such diminished productiveness." The plaintiff is content with the finding and the defendant has neither excepted nor appealed.

We presume that the Court refused to render judgment for the $60 yearly damage on the supposition that when permanent damages were awarded the easement thereby acquired dated back to the time of the original injury. For this ruling we see no warrant in law. This Court has repeatedly held that there is appurtenant to all lands a natural easement entitling the owner to discharge surface water *in its natural course* regardless of the ownership of the lower lands; but this does not include diverted waters which in their natural flow would find a different outlet. Such diversion would be a trespass which would entitle the injured party to compensation for all resulting damage, and under certain circum-

stances to an abatement of the nuisance. It is true that the works of certain *quasi* public corporations are not liable to abatement, on the theory that to interfere with such works might seriously affect the proper performance of their public duties; but this does not exempt them from liability for any unlawful damage. Any attempt to do so would be unconstitutional, and therefore all laws tending to that result must be reasonably construed. The settled rule of this Court is that: "Neither a corporation nor an individual can divert water from its natural course so as to damage another. They *may increase and accelerate, but not divert."*. *Hocutt v. Railroad Co.*, 124 N. C., 214, 219; *Mizell v. McGowan*, 125 N. C., 439, 444. When the defendant diverted unlawfully, that is, without having acquired the right to do so, the waters of Hart's Delight pocosin to the lands of the plaintiff, it committed a trespass. This trespass continues as long as the defendant continues to discharge upon the lands of the plaintiff diverted water in greater quantities than can be carried off by the natural outlet; or until the defendant acquires the *right* to discharge such waters. This right is simply an easement, which may be acquired by grant, prescription or condemnation. *Beach v. Railroad,* 120 N. C., 498. The Act of 1893, chap. 152, was merely a statute of limitation. The Act of 1895, chap. 224, professedly an amendment to the Act of 1893, provides that all actions for damages caused by the construction or repair of any railroad, shall be commenced within five years after the cause of action occurs; and that "the jury shall assess the entire amount of damages which the party aggrieved is entitled to recover by reason of the trespass upon his property."

As in actions on the case the damage is the real cause of action, it is clear that the statute does not begin to run until the damage is done.

Railroads are *quasi* public corporations charged with important public duties, which in their very nature necessarily invoke the power of eminent domain; and therefore the courts with practical unanimity have created a species of legal condemnation by the allowance of so-called "permanent damages." Our leading case upon this subject is *Ridley v. Railroad,* 118 N. C., 996, where apparently for the first time· in this State the rule is distinctly enunciated and defined. It is further developed and affirmed in *Parker v. Railroad,* 119 N. C., 684; *Beach v. Railroad, supra; Nichols v. Railroad,* 120 N. C., 496; *Hocutt v. Railroad, supra.* The provision in the Act of 1895 incidentally providing for a. statutory easement, rather by implication than direct terms, seems to us to be in effect but little more than a legislative affirmation of the rule already enunciated in other jurisdictions and adopted in Ridley's case, which was decided a year after the act was passed. It is true the act uses the words "shall assess," but they are expressly applied to the damages to which the plaintiff is entitled. This act does not profess to restrict the right of the plaintiff to compensation for the injury suffered. If the plaintiff is otherwise entitled to yearly damages, he can recover them in addition to the just compensation to which he is entitled for the value of the easement if it is conveyed to the defendant. It is true that, if entitled thereto, he must recover them in the same action, but not necessarily in the same issue. In fact it is better to submit them in different issues, as they are distinct in principle. The one is compensation for a wrong; while the other is the conveyance of a right, as the allowance of permanent damages under this act is in effect the condemnation of land to the use of a statutory easement.

But suppose the damage is not permanent and the defend-

ant does not wish to acquire the easement. Can he be made to do so regardless of the cost to himself or damage to the plaintiff. We think not. The confusion liable to arise from the word "permanent" as applied to damages is pointed out in Beach's case, *supra,* on page 502, where the nature of such an easement is discussed. Whether the damage is permanent or not, must appear from the pleadings. If the damage is in itself irreparable, or if it will probably recur from a given state of things which the defendant refuses to change, and which the Court from motives of public policy will not make him change, permanent damages are allowed as the only way of doing justice to the plaintiff, and at the same time preventing interminable litigation. As far as the plaintiff is concerned, permanent and recurring damages are the same to him, if they equally result in the destruction of his property. The latter are in some respects worse than the former, as they merely prolong his agony, and may cause even greater loss. For instance, if a farmer knows that the railroad has acquired a right to flood his land, he will not plant it; whereas if he relies upon their subsequent forbearance from unlawful injury, he may suffer not only the damage to his land, but also the loss of his labor, seed and fertilizer. In other words, the loss of the crop means the loss of everything that has been put into the crop.

In Ridley's case, *supra,* it appeared that the damage was caused by the construction of the roadbed and bridge of the defendant, which were clearly permanent structures, the removal of which would involve not only great expense to the defendant but also great inconvenience to the travelling public. Therefore, the defendant tendered the issue of permanent damage, to which it was clearly entitled. But can mere ditches which may be run in one direction one day and changed the next, or opened in the morning and filled up at

night, be considered permanent structures? Their contin-
uance may not be necessary, and the defendant may well pre-
fer to close them up rather than pay a large sum for an
easement that it does not need.   Suppose that a section mas-
ter should carelessly dig a ditch that flooded a large brick
building in such a manner that its continuance would prob-
ably eventually undermine its walls and cause its destruc-
tion.   Could not the railroad fulfill its obligations by abating
the nuisance and fully repairing the present damage, or
would it be compelled to pay the full value of the building?
Surely the statute never contemplated such injustice as the
latter alternative.   And yet, if it takes the easement, it must
pay for it, and in any event must pay for the injury already
done.   Ditches may be made permanent, as far as the plain-
tiff is concerned, by the refusal of the defendant to change
them; and in that event, if the Court refuses to compel the
abatement, it must award permanent damages.   Such per-
manent damages represent the damage done to the estate of
the plaintiff by the appropriation of the easement of so much
of his land, or such use thereof, as may be necessary to the
easement.   As this, being the value of a right, is essentially
distinct from damages for the perpetration of a wrong, they
are cumulative and may both be recovered in the same action,
as clearly intended by the statute.

   In the case at bar, both parties have agreed to the award-
ing of permanent damages; but the defendant insists that its
acquisition of the easement condones the trespass.   This con-
tention can not be sustained upon any principle of law.   Of
course if one issue were made to include all damages, past,
present and prospective, the plaintiff would recover all to
which he was entitled.   But we think the better plan is to
submit two issues, and clearly instruct the jury as to the

nature of each.    In this way, there will be less chance of confusion and greater ease of review.

The judgment will be amended in the court below, so as to allow the plaintiff the sum awarded by the verdict for damage to crops, in addition to that found for permanent damage.

The judgment is therefore

Modified and affirmed.