MIZELL v. McGOWAN.

(Filed October 1, 1901.)

1. WATERS AND WATERCOURSES—*Diversion—Acceleration—Increase—Damages—Drains.*

Water can not be diverted from its natural course so as to damage another, but it may be increased and accelerated.

2. WATERS AND WATERCOURSES—*Damming or Draining Lowlands—The Code, Vol. I, Chap. 30.*

Chapter 30, Vol. I, of The Code, applies only to artificial outlets made over the land of another to reach a natural watercourse.

ACTION by W. G. Mizell against G. A. McGowan and others, heard by Judge *W. A. Hoke* and a jury, at May (Special) Term, 1901, of the Superior Court of PITT

County. From a judgment for the defendants, the plaintiff appealed.

*A. M. Moore,* for the plaintiff.
*Skinner & Whedbee,* and *Jarvis & Blow,* for the defendants.

DOUGLAS, J. This is an action for damages to the plaintiff's land from flooding alleged to have been caused by the improper and unlawful construction of ditches by the defendant.

This is the third time that it has been before this Court, being reported in 120 N. C., 134, and 125 N. C., 439.

The following are the issues and answers thereto: "1. Is the plaintiff the owner and in possession of the lands described in the complaint? Ans. 'Yes.' 2. Did Mrs. Laura A. McGowan wrongfuly and unlawfully divert any water from its natural channel and discharge it upon the lands of plaintiff, causing damage to same? Ans. 'No.' 3. What damage, if any, has plaintiff sustained by reason of the wrongful diversion of said water? Ans. 'Nothing.' "

We think these were the proper issues, and covered every contention left open to the plaintiff in view of the opinions already rendered by this Court in this case. We see no reason to depart from the rule we have laid down, and which may now be considered settled, that "neither a corporation nor an individual can divert water from its natural course so as to damage another. *They may increase and accelerate, but not divert." Hocutt v. Railroad,* 124 N. C., 214; *Mizell v. McGowan,* 125 N. C., 439; *Lassiter v. Railroad,* 126 N. C., 509. The question of diversion was all that was left to the plaintiff, and that was submitted to the jury under instructions that appear to us without error.

We are aware that great hardship may sometimes occur

from the unlimited right of increase and acceleration, and that there are some authorities limiting it to the capacity of the natural outlet; but we must adhere to the rule as the result of our deliberate judgment. However short it may fall as a theoretical definition of ideal right, we can frame none better that is capable of practical application.

Its limits are clearly defined by the natural landmark of the water-shed, which, seen of all men, renders it easy of application and capable of definite proof. Any other rule would prevent the drainage of large bodies of swamp lands of great natural fertility and capable of the highest degree of improvement, but now worse than useless. They will eventually be needed to support an ever-increasing population, and to shut them up indefinitely as the mere homes of disease is repugnant to the highest principles of public policy and of private right. Suppose the natural capacity of the water-course was made the test of the rule, it would be so extremely difficult of application as practically to destroy its value. What is the natural capacity of a stream? Is it measured at low water or at high water Almost any stream can carry off whatever water may be made to flow into it in dry weather, or perhaps even in ordinary times. On the contrary, the clearing up of our lands is having the double effect of greatly accelerating the flow of water and at the same filling up our streams with sand, so that very few of them can now carry the water naturally flowing into them after heavy rains.

Again, suppose the upper tenant were compelled to regard the natural capacity of the stream, how far down would this limitation extend? Naturally, many others would drain into the same stream, so that the landowner near its mouth would get the accumulated waters of all those above him. In case of injury, how would he apportion his damages, and where would the liability of each *tort-feasor* begin and end? These

questions, it seems to us, would severely tax the utmost ingenuity of the Courts, and leave the jury in such a state of perplexity as to seriously endanger their intelligent determination of the issues.

It is contended by the defendant that Chapter 30 of The Code should be taken as determining this case. We do not think so. Those sections by their very terms apply to artificial outlets, such as ditches and canals, and not to natural watercourses. A man can dig ditches wherever he pleases upon his own land, provided he runs them into a natural watercourse before leaving his own land, subject only to the limitation against diversion. But if he can not reach a natural watercourse without going into the lands of another, he must proceed under Chapter 30 of The Code. The scope of this chapter is indicated in section 1297, which is in part as follows: "Any person owning pocosin, swamp or flat lands, or owning low lands subject to inundation, which can not be conveniently drained or embanked so as to drain off or dam out the water from such lands, except by cutting a canal or ditch, or erecting a dam *through or upon the lands of other persons,* may, by petition, apply to the Superior Court of the county," etc.

In the case at bar the defendant has not cut any ditch upon the lands of the plaintiff, nor does she wish to do so. She has simply, by means of her own ditches, turned into a natural watercourse upon her own land increased and accelerated but undiverted waters. The rules governing natural and artificial watercourses as outlets through the lands of another, are essentially different—this opinion dealing exclusively with the former.

The judgment is
Affirmed.