RICE v. NORFOLK AND CAROLINA RAILROAD.

(Filed June 17, 1902.)

1. WATERS AND WATERCOURSES—*Diversion—Acceleration—Increase—Damages—Drains.*

Water may not be diverted from its natural course so as to damage another, but it may be increased and accelerated.

2. EVIDENCE—*Damages—Waters and Watercourses.*

In an action for damages for diverting waters upon the land of another, it is not competent to ask party seeking damages, on cross-examination, what he would take for the land.

3. EVIDENCE—*Damages—Waters and Watercourses.*

In an action for damages for diverting water upon the land of another, it is not competent to ask witness for party seeking damages whether water could have been turned in another direction without great and unusual expense.

4. EVIDENCE—*Damages—Waters and Watercourses.*

In an action for damages for diverting water upon the land of another, it is not competent to show that the land of another situated as the land of the party seeking damages was not damaged.

5. DAMAGES—*Waters and Watercourses—Acts 1895, Chap. 224.*

In an action for damages for diverting water upon the land of another, the party seeking damages may recover for any damages sustained between the bringing of the action and the trial thereof.

ACTION by J. D. Rice and wife against the Norfolk and Carolina Railroad Company, heard by Judge *O. H. Allen* and a jury, at November Term, 1901, of the Superior Court of BERTIE County. From a judgment for the plaintiffs, the defendant appealed.

*B. B. Winborne,* and *St. Leon Scull,* for the plaintiffs.
*George Cowper,* for the defendant.

DOUGLAS, J.    This was an action brought to recover damages for injury to the plaintiff's land, caused by the alleged collection and diversion of surface water.    It appears from the evidence that the defendant's track ran through a depression in the surface of the land of considerable extent, in which water became ponded and which had no natural outlet. By saying there was no natural outlet, we presume the witnesses meant that there was no such outlet for the water in the pond below a certain level, as several of them testified that the water ran in different directions before the railroad ditches were cut.    It would be difficult to find even a natural basin which does not empty its surplus water in some one direction when it becomes full.    It is alleged that the defendant, in draining this basin, cut through a ridge and diverted the water from its natural direction into ditches or artificial drainways too small to hold it.    There is evidence to this effect to sustain the issues found by the jury.    It does not appear that any of the ditches or canals were natural watercourses; but this would make no difference in a case of diversion; and as this action seems to have been tried practically upon that issue, we will confine ourselves principally to its consideration. Whether water has been diverted is an issue of fact for the jury, while the effect of such diversion is a question of law for the Court.    The rule has become too well established in this State to need further discussion.    It has been generally stated in the following words: "Neither a corporation nor an individual can divert water from its natural course so as to damage another.    They may *increase and accelerate, but not divert.*"    *Hocut v. R. Co.,* 124 N. C., 214; *Mizzell v. Mc-Gowan,* 125 N. C., 439; S. C., 129 N. C., 93; *Wiley J. Lassiter v. R. Co.,* 126 N. C., 509; *Mullen v. Canal Co.,* at this term.    If a natural basin has absolutely no outlet, either at bottom or top, that is, that the water never ran out of it in any particular direction, we can not see how any natural ser-

vitude could rest upon the adjoining lands. Under such circumstances, we see no recourse open to the owner of the basin except to proceed under Chapter 30, Volume I of The Code, as indicated in *Porter v. Armstrong,* 129 N. C., 101. Even surface water can not be collected into artificial channels and thrown upon the land of another where there is no natural watercourse nor adequate means for its reception.

In Gould on Waters (3d Ed.), Sec. 271, the author says: "An owner of land has no right to rid his land of surface water, or superficially percolating water, by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor. This is alike the rule of the common and civil law."

In Angell on Watercourses (7th Ed.), Sec. 108J, the author says: "But one proprietor of land has no right to cause a flow of the surface water from his own land over that of his neighbor, by collecting it into drains or culverts or artificial channels; he can not thus, by his own act merely, convert a flow of surface water into a stream, passing from his own over his neighbor's land, with all the legal incidents of a natural watercourse." The subject is clearly discussed in the remainder of this and in the following section, 108K; and also in Washburn on Eas. and Ser., 353.

We find two cases very similar to that at bar, both relating to the drainage of a natural basin. In *Butler v. Peck,* 16 Ohio St., 335, 344, 88 Am. Dec., 452, the Court says: "The sole question * * * is this: Whether an owner of land having upon it a marshy sink or basin of water, which basin, as to a considerable portion of the water which collects within it, has no natural outlet, may lawfully throw such water, by artificial drains, upon the lands of an adjacent proprietor? We are clear that no such right exists. It would sanction the creation, by artificial means, of a servitude which nature has denied. The natural easement arises out of the relative alti-

tudes of adjacent surfaces as nature made them, and these altitudes may not be artificially changed to the damage of an adjacent proprietor. And it makes no difference that, in the hypothetical case on which the charge of the Court below complained of is based, in times of high water a portion of the waters of the basin would overflow its rim, and find their way along a natural swale to and upon the lands of the plaintiff below; for, as to those waters which could not naturally surmount nor penetrate the rim of the basin, but were compelled to pass off by evaporation or remain where they were, the case is the same as if the basin had no outlet whatever."

In *Miller v. Laubach,* 47 Pa. St., 154, 155, 86 Am. Dec., 521, the Court says: "No doubt the owner of land through which a stream flows may increase the volume of water by draining into it, without any liability to damages by a lower owner. He must abide the contingency of increase or diminution of the flow in the channel of the stream, because the upper owner has the right to all the advantages of drainage or irrigation reasonably used as the stream may give him. But that is an entirely different thing from draining the water standing on the lands of one, through artificial channels, onto that of another. That can not be done without his consent."

There is an essential difference, which must be borne in mind, between drainage into natural watercourses and that into canals or other artificial drainways. This difference is illustrated in the cases of *Mizell v. McGowan* and *Porter v. Armstrong, supra.*

In the application of these principles, we see no error in the charge of his Honor of which the defendant can complain. His refusal to charge was equally proper. We see no error in the exclusion of testimony. The male plaintiff was asked "If he would take $200 for the whole land. The witness then said that the land was not his, but his wife's." The question was incompetent in form and substance. The wit-

ness did not own the land, and could not sell it.   Whether·
he would have taken $200 for it, if he had owned it, might·
depend upon various contingencies, as, for instance, how·
badly he needed the money, and whether the price had been.
offered to him before or after the damage caused by the de-·
fendant, or included the damage.    There must be some direct
relevancy in the question to the fact at issue before it can.
become competent.    The second question, as to whether the·
witness would join in a deed with his wife for $200 is of the·
same general nature, and falls under the same objection.

Another witness was asked "If water could have been.
turned in any other direction without great and unusual ex-
pense?"   This was properly excluded.   The question at issue·
was not what a different system of drainage would have cost
the defendant, but what damage was done to the plaintiff.
The legality of the work does not depend upon its cheapness,.
and it is no defense for an unlawful act to say that it was
cheaper than obeying the law.   If this had been an action for·
injunction to compel the defendant to close up its ditches,
the question might, perhaps, have been admissible, as tending·
to show the necessity for the system of drainage adopted, or·
the easement claimed; but the plaintiffs, in their complaint,.
express their entire willingness for the assessment of perma-
nent damages.   The question, therefore, is not whether the·
defendant shall have its easement, but whether it shall pay
for it.   The necessity of compensation, as an inherent requi-
site for the exercise of the power of eminent domain, has·
been recently considered in *Phillips v. Tel. Co.,* at this term.

The defendant asked another witness "How his own lands·
were located with reference to those of plaintiff's, and stated
to the Court that his purpose was to show that the land of·
the witness is of the same nature as that described in the·
complaint, and they are so located, adjoining plaintiffs' land,
that the effect of defendant's ditches would be the same on·

both tracts, and that witness' land was not hurt." This question bringing in a collateral matter that might itself be disputed, was properly excluded under the line of decisions represented by *Warren v. Makeley,* 85 N. C., 12; *Bruner v. Threadgill,* 88 N. C., 361; *Hinton v. Pritchard,* 98 N. C., 355, and *Cline v. Baker,* 118 N. C., 780.

As the issue as to permanent damages was submitted without objection, it was proper to submit also the fourth and fifth issues. In cases where *permanent* damages are all owed, that is, where the easement is acquired by the defendant, "the entire amount of damages which the party aggrieved is entitled to recover by reason of the trespass upon his property," should be assessed in the same action, under Chapter 224 of the Public Laws of 1895. This, of course, includes the damages sustained between the bringing of the action and the rendition of the judgment.

The judgment of the Court below is
Affirmed.