T. E. HOOKER v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 4 October, 1911.)

1. Water and Water-courses—Wrongful Diversion—Natural Water-course—Overflow—Drainage.

One who diverts water from its natural course so as to damage another, whether it be a corporation or an individual, or who cuts ditches through a watershed to conduct water to a water-course, which is thereby rendered inefficient to carry it off and thereby damages the land of another, is liable for the damages thus caused.

2. Same—Railroads.

A railroad company, in making its roadbed, cut lateral ditches to convey water from its natural course and watershed into a stream, branch, or run, a natural water-course, flowing through plaintiff's land, and thereby overcharged the stream, causing it to overflow and pond back upon the lands of plaintiff, to his damage: *Held*, the plaintiff is entitled to recover the damages thus caused.

3. Same—Lateral Ditches—Adjoining Owner.

When it appears that the lands of plaintiff were damaged by reason of defendant's wrongful diversion of water into a natural water-course by the use of lateral ditches dug by defendant, the fact that the water had to flow through these ditches upon the lands of another before reaching the *locus in quo* does not affect the plaintiff's right of recovery.

4. Water and Water-courses—Wrongful Diversion—Natural Water-course—Overflow—Proximate Cause—Questions for Jury.

Upon conflicting evidence as to whether damage to plaintiff's lands was caused by the wrongful diversion from the watershed of water into a natural water-course, causing it to overflow and pond water upon the *locus in quo*, or was caused by a failure to

properly clear the water-course upon and below the land of plaintiff, the question is for the jury upon proper instructions from the court.

5. **Water and Water-courses—Wrongful Diversion—Natural Water-course—Overflow—Proximate Cause—Intervening Cause.**

When it appears that the defendant had had lateral ditches on the land of an upper owner dug for the purpose of carrying the water from its natural course into a natural water-course so as to cause it to overflow, to the damage of plaintiff's lands, the diversion by means of these ditches is the proximate cause; and the defendant's position cannot be advantaged, on the ground of intervening negligence, by the fact that the upper owner had, at the instance and expense of the defendant, enlarged the ditches in order to provide for the increased flow of the water as diverted.

6. **Instructions—Requests—Substantially Given.**

An instruction need not be in the express language of a correct request, if it is sufficiently responsive and gives a correct statement of the law applicable to the questions presented.

7. **Water and Water-courses—Permanent Damages—Husband and Wife—Necessary Parties—Easements.**

The action of the trial judge in permitting the wife of the plaintiff to be made a party plaintiff after the jury had been impaneled in his action for permanent damages to his land alleged to have been caused by the defendant's wrongful diversion of the flow of water thereon, is not reversible error, the land being held under a deed to the husband and the wife. The wife was a desirable and perhaps a necessary party in order that on payment of permanent damages an easement might pass to defendant.

APPEAL from *Ward, J.,* at December Term, 1910, of PITT.

There was allegation, with evidence, on the part of plaintiff, tending to show that defendant company, in the construction of its roadbed, had wrongfully diverted surface waters from their natural watershed, "caused same to flow into Patrick's Branch or Hardee's Run," rendering same "insufficient and incapable of discharging said waters by reason of the increased servitude put upon them by said wrongful act, thereby causing said branch or run to overflow and pond back its waters upon plaintiff's land, to his great damage, etc." The

allegations were denied and evidence offered by defendant to support such denial, and tending further to show that the injuries complained of were in great part caused by a failure to clear out the run below said land, and were not properly attributable to any wrongful diversion of water by defendant. On issues submitted, the jury rendered the following verdict:

"1. Did the defendant, in digging its lateral ditches in the construction of its railroad, wrongfully cause water to be diverted in and down Patrick's Run and thereby injure and damage the lands of plaintiff, as alleged in the complaint? Answer: Yes.

"2. What permanent damages has plaintiff sustained thereby? Answer: $600."

Judgment on the verdict, and defendant excepted and appealed.

*F. G. James & Son for plaintiff.*
*Moore & Long for defendant.*

HOKE, J., after stating the case: It is now well established with us that "Water cannot be diverted, but may be increased and accelerated." The principle obtains in respect to both corporations and individual owners of property, and has been applied and illustrated in many well-considered decisions of the Court. *Roberts v. Baldwin,* 151 N. C., 407; *Mizell v. McGowan,* 129 N. C., 93; *Hocutt v. R. R.,* 124 N. C., 214; *Parker v. R. R.,* 123 N. C., 71. Stated in a way more directly relevant, it was held in *Hocutt's case, supra,* that, "Neither a corporation nor an individual can divert water from its natural course, so as to damage another; neither can they cut ditches through a watershed and conduct water to a water-course, insufficient to carry it off, whereby the water is flooded upon the lands of another."

There was testimony on the part of plaintiff tending to show that the defendant company in making its roadbed had, by lateral ditches, conveyed water from its natural course and watershed into a stream called Patrick's Branch or Hardee's Run, a natural water-course, flowing through plaintiff's lands,

and had thereby overcharged said stream, causing same to overflow and pond back upon said lands, to plaintiff's great damage. There was much testimony on part of defendant in denial and rebuttal of plaintiff's evidence, and tending to show that there had been no diversion of water into said run, and that the injury complained of was caused, in fact and in truth, by a failure to properly clear said run of obstructions therein, upon and below the lands of plaintiff. Under a clear and comprehensive charge, in which the principles applicable were correctly stated by the court, the jury have accepted the plaintiff's version of the case, and we find no error that gives defendant any just ground of complaint.

We cannot approve the position that recovery should be denied because the diverted water, before reaching plaintiff's lands, where the damage occurred, first passed through the ditches of an adjoining proprietor. Under the charge, the jury have found that the injury was caused by reason of the water being diverted, and on the facts in evidence we do not see that the existence of these ditches could prevent the said diversion from being the proximate cause of the injury. The position, however, is not open to defendant, on this testimony, for it appeared that the ditches in question were enlarged by the neighbor at the instance of defendant and the work was paid for by the company in order to provide for the increased flow of water. The court also laid down the correct rule as to the admeasurement of damages, and the charge was fully responsive to defendant's prayer for instruction on that question. It is well recognized that a prayer for instructions need not be given in its exact language if the general charge is sufficiently responsive and gives a correct statement of the law applicable to the question presented. *Patterson v. McIver,* 90 N. C., 493; *Edwards v. Phifer,* 121 N. C., 391. Nor is the objection well founded that the wife of the original plaintiff, T. E. Hooker, was joined as coplaintiff after the jury was impaneled. True, it has been held in this State, "That a court has no power to convert a pending action that cannot be maintained into a new one by admitting a new party plaintiff, who is solely interested." *Merrill v. Merrill,* 92 N. C., 657.

But no such case is presented here. The land alleged to be damaged was held under a deed to T. E. Hooker and his wife, and while it seems the husband might have proceeded alone if the same had been prosecuted for a simple trespass (*West v. R. R.,* 140 N. C., 620), inasmuch as the question was submitted and determined on an issue as to permanent damages, the wife was a desirable and perhaps a necessary party, in order that on payment of permanent damages an easement might pass to the defendant. *Porter v. R. R.,* 148 N. C., 563. There was no suggestion, certainly no indication, of any surprise by reason of this change of parties. So far as appears, the witnesses on the issues were the same in the one case as in the other and the entire matter seems to have been fully presented to the jury. We find no reason for disturbing the conclusion they have reached, and the judgment on the verdict must be affirmed.

No error.