J. D. HOCUTT and E. McLENDON, Administrators of W. B. HOCUTT, v. WILMINGTON & WELDON R. R. CO.

(Decided March 21, 1899).

*Damages—Misjoinder—Statute of Limitations.*

1. The objection of misjoinder of parties is to be taken by demurrer; the failure to demur is a waiver of the objection.

2. Permanent damages to land go to the heir. When the answer demands to have all permanent damages, if there be any, assessed in this action, the defendant can not object if it is done, nor if the heir is subsequently made party upon defendant's own motion.

3. While a person may, under certain circumstances, bring an action to enjoin the commission of an act that threatens irreparable injury, he can not maintain an action for damages until injury has been sustained. The injury is the cause of action, and the statutes of limitation can not begin to run before the cause of action accrues.

4. Neither a corporation nor an individual can divert water from its natural course, so as to damage another, neither may they cut ditches through a water-shed and conduct water to a watercourse, insufficient to carry it off, whereby the water is flooded upon the land of another.

HOCUTT *v.* W. & W. R. R. Co.

CIVIL ACTION to recover damages for flooding plantiffs' land, and thereby injuring both crops and land, tried before *Adams, J.,* at Spring Term, 1898, of PENDER Superior Court.

The action was commenced on August 30, 1895, by W. B. Hocutt, intestate of plaintiffs.

At the instance of the defendant, an issue was submitted as to permanent damages, and in this Court, upon motion of defendant, the heirs were made parties.

The answer denied any liability and pleaded the statute of limitations.

It was in evidence that the ditches, cut by defendant to drain its road-bed, conducted the water to a natural water-course, and had been in use over twenty years without injury to plaintffs' land.

It was also in evidence that the defendant's ditches diverted the surface water from its natural course, across the water-shed, and in consequence of heavy rains in May, 1895, more water was conducted through the ditches than could be carried off by the small stream into which they emptied, and plaintiffs' crop and land were flooded and injured.

His Honor's charge, in the various aspects of the evidence (which was very voluminous), was considered by this Court as liable to no just exception.

There was no exception to the evidence.

The jury rendered a verdict assessing permanent damages. Defendant excepted. Judgment and appeal.

*Messrs. Junius Davis* and *Marsden Bellamy,* for defendant (appellant):

*Messrs. Allen & Dorlch* and *J. T. Bland,* for plaintiff.

DOUGLAS, J. This is an action brought to recover dam-

ages arising from the floodings of land, caused, as alleged, by the unlawful diversion of water through the defendant's ditches. The action was originally brought by W. B. Hocutt, the owner of the land, who dies during its pendency. Thereupon J. D. Hocutt and E. McLendon, administrators of W. B. Hocutt, were made plaintiffs.

Before the call of the case the plaintiffs moved in this Court to make the minor heirs of W. B. Hocutt parties plaintiff through their general guardian, J. D. Hocutt. This motion was proper, and was granted. After it was granted, the defendant moved to rescind this order, on the ground that it created a misjoinder of parties as well as of subject matter, inasmuch as the damages for loss of crops would go to the administrators, while all the damage to the land itself belongs to the heirs. Had the administrators and the heirs originally brought a joint action for the loss of the crop, together with the permanent damage to the land, there might have been such a misjoinder, but such was not the case. Even if it had been, the defendant could have sustained its objection only by demurrer, as the error would appear from the face of the complaint. *Finley v. Hayes,* 81 N. C., 368; *Mining Co. v. Smelting Co.,* 99 N. C., 445; *Hall v. Turner,* 111 N. C., 180; *McMillan v. Baxley,* 112 N. C., 578; *Kiger v. Harmon,* 113 N. C., 406, 408. The failure to demur would have been deemed a waiver of the objection. The defendant contends that as the heirs were made parties plaintiff only in this Court, it had no occasion to demur in the Court below, and now avails itself of its first opportunity to demur *ore tenus* before us. We think the defendant has clearly waived its right to demur by its action in the Court below. After the death of the origninal plaintiff, and the administrators becoming parties, it demanded that the permanent damages to the land should be assessed. If, as it contends, and which

we concede, such damages should go to the heirs, it ill becomes the defendant to object to the heirs becoming parties to an action in which it has demanded an adjudication of their rights. If there is any misjoinder of causes of action, it has been brought about by the defendant itself injecting into this case the issue of permanent damages. A defendant may demur to the complaint, but not to its own answer.

The defendant further contends that it should be granted a new trial because the damages have not been apportioned among the respective plaintiffs, and that a new law suit might otherwise become necessary between the plaintiffs themselves in order to adjust their relative rights. We do not see how this contingency would concern the defendant. In one aspect it is better for the defendant that the minor heirs should become parties, as they are thereby bound by the judgment, which will thus vest in the defendant the easement it has sought. The plaintiffs allege that the defendant, in order to drain its road-bed and right-of-way, has cut deep ditches beside its road, whereby it diverts large volumes of water from its natural course and flow, and empties it into a small branch or flat bottom, known as Rattan Trestle or Jumping Run Branch; that it has provided no sufficient outlet for such accumulated and diverted waters, thereby causing the same to pond or back up and overflow the plaintiffs' land, whereby they and their intestate have been greatly damaged within the three years next preceding the action.

The defendant files three successive answers, denying the cause of action, alleging that the ditches are properly constructed and have been used for more than three years before the bringing of this action, for more than five years and for more than twenty years; that the railroad was built prior to the year 1840, and has since been in constant operation.

In its final answer it "demands to have all permanent damages, if there be any, assessed in this action."

Under our decisions, this turns the action into one for permanent damages, whatever may have been the original nature of the plaintiffs' claim. *Parker v. Railroad,* 119 N. C., 677; *Nichols v. Railroad,* 120 N. C., 495; Laws 1895, chapter 224.

It is difficult to see how permanent damages can be assessed in all cases where there is no permanent damage, and where the only injury results from causes that are not in their nature permanent and may never again occur. But as the defendant demanded such an assessment, and as the case was tried upon that issue, we do not feel at liberty to disturb the verdict on that ground. It does not appear when or how the defendant withdrew its demand for permanent damages, unless inferentially from its objection to the issues submitted; but, then, its own 7th issue tendered was broad enough to admit of such an assessment. In fact it did not vary from the second issue submitted as to the character of the damage to the land, but only as to its cause.

It is unnecessary to separately consider each exception, as they naturally group themselves around two or three essential principles. We see no error in the refusal to submit the issues tendered by the defendant. Those submitted, taken in connection with his Honor's charge, were sufficient to present and determine all material points of controversy. The charge itself appears to be unexceptionable. It is full, clear and accurate, in which the principles of law laid down are correctly applied to the facts involved. None of the statutes of limitations appear to bar the action. It is contended by the defendant that the sole damage was done by the freshet of 1895, which happened only a few months before the bringing of the action. It makes no difference when the ditches were dug, provided they did not injure the

plaintiffs. The defendant had a perfect right to dig its ditches or use its land as it saw fit, without injury to another. The digging of the ditches, or the building of the road, or any other act done five or twenty or fifty years before, was utterly immaterial to the present controversy, as, in themselves, they constituted no cause of action. While the plaintiff might, under certain circumstances, have enjoined the commission of an act that threatened irreparable injury, he could not have maintained an action for damages that he had not sustained, and might never sustain. It is well settled that the injury is the cause of action and that no statutes of limitation can begin to run before the cause of action accrues. This principle is the only just basis for any statutes of limitation, which otherwise would be subversive of common right. They are statutes of repose, intended to force all men to litigate their claims within a reasonable time, while the facts are yet fresh in the memory of living witnesses, and before the probable loss or destruction of important papers. It has been well said that by such statutes the law is constantly building up around the rights of the citizen muniments of title to take the place of those naturally decaying under the touch of time's effacing finger.

But why force a man to sue when he can recover nothing? The principle is well settled. *Ridley v. Railroad,* 118 N. C., 996; *Beach v. Railroad,* 120 N. C., 498. The injury complained of is the flooding of the plaintffs' land, caused by the unlawful act of the defendant in diverting water from its natural course, and concentrating it at a point where there was no sufficient natural or artificial outlet. It is now well settled that neither a corporation nor an individual can divert water from its natural course so as to damage another. They may increase and accelerate, but not divert. *Jenkins v. Railroad,* 110 N. C., 438; *Parker v. Railroad,* 123 N. C., 71.

There was certainly sufficient evidence of diversion to go to the jury, and this of itself disposes of several of the exceptions. In addition to the testimony, there was a map accompanying the record, which shows a natural water-shed some distance north of the plaintiffs' land and about 400 feet south of Branch No. 2, which flows east. The waters of Big Bay originally flowed into this branch, but were diverted by Devil's Ditch and discharged into Branch No. 3 still further to the north. Had the natural water-shed remained intact, when the dam at Devil's Ditch broke, its water would have resumed its old channel in Branch No. 2 and would not have reached the plaintiffs' land, going far to the northeast. But its outlet into Branch No. 2 was closed, and it naturally found its way into the railroad ditch which had been cut through the water-shed. It was thus diverted from its natural outlet to the east, and carried back south to the head of Jumping Run. It is true the testimony shows that the railroad ditch stopped about 200 feet from Devil's Ditch, but it also shows that it was cut through the water-shed to a flat place that lay between it and Devil's Ditch.

The same diversion was shown as to the water of Branch No. 6, which naturally flowed south into Jumping Run about a thousand feet west of the trestle, but which was carried by Porter's ditches east into the railroad ditch, and by it discharged into Jumping Run at its head at Rappan Trestle. The effect of this diversion and concentration was to accumulate a large amount of water at the head of Jumping Run, which it was unable to carry off and which, therefore, flowed back upon Hocutt's land.

It is true that Jumping Run is a natural water-course and drain way, as contended by the defendant; but it is such only as to those waters that naturally flow into it. The de-

fendant contends that it should not be held responsible for Porter's ditches. This might be true were it not for the fact that its own ditch received the water from Porter's ditches and discharged it upon the plaintiffs, thus becoming the proximate cause of the injury.

At the request of the defendant, his Honor charged that, "If the damages to the plaintiffs' land and crops were caused by the water coming down through the ditch of the defendant on the west side of the railroad to Rattan Trestle, and then through the trestle and ditch dug by Hocutt from the trestle to his land, then the defendant is not liable, and the plaintiffs can not recover any damages." The jury evidently did not believe that Hocutt's ditch caused the damage, and their conclusion is not surprising, in view of the fact that this ditch was dug to drain Hocutt's land west into Jumping Run. That such a ditch should carry sufficient water up stream, not only to fill its own banks but to flood the surrounding country, would seem somewhat remarkable.

As we see no error in his Honor's charge, or his refusal to charge, and as there was sufficient evidence to go to the jury upon the material issues, the judgment must be affirmed.

Affirmed.