R. L. CAUSEY, ADMINISTRATOR, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 20 May, 1914.)

1. Negligence—Master and Servant—Release—Trials—Circumstantial Evidence—Fraud—Evidence—Questions for Jury.

In this action brought by an administrator to recover damages of a railroad company for the wrongful death of an employee, there was evidence tending to show that the defendant obtained a release from the intestate for all damages arising from the injury, which eventually resulted in his death, for an inadequate consideration, when he was in pain and suffering from the result of the injury, but desired to keep his situation in the defendant's service; that the defendant's claim agent, who procured the release, made conflicting statements, as a witness in defendant's behalf, as to the time and place it was executed, and as to whether the intestate had sent for him; that the payment made to the intestate was only intended to cover the time he had lost from his employment, which it did not do, and not physical or mental pain or suffering caused by the injury; that the agent of defendant was the only one with the intestate when the release was obtained: *Held*, the evidence, though circumstantial in its character, was sufficient to sustain a finding of the jury in plaintiff's favor, upon the issue as to the fraud of the defendant's agent in procuring the release set up as a defense.

2. Limitation of Actions—Wrongful Death—Executors and Administrators—Interpretation of Statutes.

The right of action given for the wrongful death of the intestate is given by statute to his administrator, and did not exist at common law. Hence the statute of limitations does not begin to run against such cause of action until the death of the intestate, caused by the personal injury, has resulted.

APPEAL by defendant from *Long, J.,* at December Term, 1913, of RANDOLPH.

This is an action to recover damages for the wrongful death of the plaintiff's intestate, caused, as alleged, by the negligence of the defendant.

The intestate was injured on 1 December, 1903, and died on 7 June, 1912. On 27 December, 1903, the intestate executed the following conditional release:

SEABOARD AIR LINE RAILWAY.

*Conditional Release Agreement.*

If, before the expiration of thirty days from this date, the Seaboard Air Line Railway shall pay to me, H. O. Causey, the sum of $75, I hereby agree to release the said railway of and from all claims whatsoever for damages for or on account of personal injury sustained by No. 1 freight running into A. C. L. freight at Hilton Bridge, throwing me against stove, cutting my head, on 1 December, 1903.

Witness my hand and seal, this 27 December, 1903.

(Signed)   H. O. CAUSEY.   [SEAL]

Witness:

(Signed)   R. M. BALDWIN.

The foregoing conditional release agreement has the following indorsements stamped on it: "Voucher made for 5 January, 1904, amount shown," and "Voucher sent to Auditor Disbursements, 8 February, 1904."

On 17 February, 1904, the intestate executed the following release:

SEABOARD AIR LINE RAILWAY.

*Release.*

For and in consideration of the sum of seventy-five and no/100 dollars ($75) to me paid, the receipt of which is hereby acknowledged, I, H. O. Causey, do hereby release and forever discharge the Seaboard Air Line Railway, and any and all rail-

roads owned, leased, operated, or controlled by it, and its successors, from all injuries received by me in collision of trains S. A. L. No. 1, and A. C. L. No. 80, on or about 1 December, 1903, at or near Wilmington, N. C., while a conductor in the employ of the Seaboard Air Line Railway; the consideration hereinbefore referred to being in full compromise, satisfaction, and discharge of all claims and causes of action arising out of the injuries, and in exoneration of the railway from all liability by reason thereof.

In witness whereof I have hereunto set my hand and seal, this 17 February, A. D. 1904.

                    (Signed)   H. O. CAUSEY.   [SEAL.]
Signed, sealed, and delivered in the presence of:
                    (Signed)   R. M. BALDWIN.

The defendant pleaded the release as a defense, and also the statute barring a recovery for personal injury within three years.

The plaintiff replied, alleging that the release was procured by undue influence and fraud.

The jury returned the following verdict:

1. Was H. O. Causey, the intestate of the plaintiff, killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did H. O. Causey, the intestate of plaintiff, execute the release as alleged by the defendant, the Seaboard Air Line, in its answer?   Answer: Yes.

3. If plaintiff's intestate did execute and deliver the said release, did he at the time of the execution thereof have sufficient mental capacity to understand the nature and effect of the said release?   Answer: Yes.

4. If the deceased, H. O. Causey, did not have such mental capacity, did the defendant have notice thereof?   Answer: No.

5. If said release was executed and delivered as alleged in the answer, was the same procured by fraud and undue influence of the defendant, the Seaboard Air Line, as alleged by the plaintiff?   Answer: Yes.

6. Is the plaintiff's cause of action barred by the statute of limitations? Answer: No.

7. What damage, if any, is the plaintiff entitled to recover? Answer: $6,075.

*Hammer & Kelly for plaintiff.*
*W. H. Neal for defendant.*

ALLEN, J. There was evidence to support the finding by the jury that the injury in 1903 caused the death of the intestate, and this is practically conceded by the defendant.

It is, however, earnestly insisted that there was no evidence of fraud or undue influence in procuring the execution of the release set up as a defense.

No presumption of fraud arises from the relation of employer and employee, "but it is recognized by the courts that the employer has great influence in determining the conduct of the employee, and may use it to his injury." *King v. R. R.,* 157 N. C., 63. And "Where there is no coercion amounting to duress, but a transaction is the result of a moral, social, or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances undue influence naturally has a field to work upon in the condition or circumstances of the person influenced which render him peculiarly susceptible and yielding—his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessity, his ignorance, lack of advice, and the like." Pom. Eq. Jur., vol. 2, sec. 851.

The plaintiff relies upon circumstantial evidence to prove fraud and undue influence, and as was said by *Justice Brown* in the matter of *Everett's Will,* 153 N. C., 85: "Experience has shown that direct proof of undue or fraudulent influence is rarely attainable, but inference from circumstances must determine it.

"Undue influence is generally proved by a number of facts, each of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence."

Let us, then, examine the circumstances connected with the execution of the release. The intestate was in the employment of the defendant when the release was executed, and wished to continue the employment. He was injured on 1 December, 1903, by a blow on the back of the head, and while the jury finds that he had sufficient mental capacity to execute a release, it was in evidence that he had trouble with his head continuously after the injury. He accepted $75 in settlement for an injury which finally resulted in death.

The settlement was made under an agreement to pay him for his lost time (the claim agent of the defendant testifies to this), and he was at that time earning from $90 to $95 a month, and according to the evidence of the plaintiff, lost two and one-half months.

The evidence does not disclose that any one was present when the release was executed, except the claim agent of the defendant, and he made conflicting statements as to his meeting with the intestate, saying: "I met him by appointment. He sent word that he wanted to see me. I did not meet him by appointment. I did not send for him to come and see me. I met him on the hotel porch at Hamlet by accident."

The conditional release was executed on 27 December, 1903, conditioned to accept $75, if paid within thirty days, under an agreement to pay for lost time, when there was due him then, computing at the rate of $90 per month, $81, and the time he would lose could not then be ascertained, as he had not resumed work.

The sum of $75 was not paid within the thirty days, but the intestate stood by the agreement, and at the end of two months and seventeen days, while still unable to work, executed a full release for $75, under the same agreement, the defendant says, to pay for lost time, when his wages alone would, at that time, have amounted to $231, not considering damages for mental and physical suffering and for reduced capacity, for which the defendant was liable, if for anything.

We have, then, a full release executed upon the payment of less than one-third of the amount agreed to be paid, and when the most important element of damages was not then taken into consideration—mental and physical suffering and reduced capacity.

It was executed by an employee who was, at the time, suffering mentally and physically from his injury, and who wished to retain his place with the defendant, and when no one was with him except the claim agent of the defendant, who made contradictory statements about his meeting with the intestate.

It would seem that one of two conclusions must follow, if the jury accepted this evidence: that the intestate did not have sufficient mind to execute a release, or that he was improperly influenced.

The jury has adopted the latter solution, and in our opinion there was evidence to support it.

In *King v. R. R.,* 157 N. C., 65, quoting from our own reports and from the Supreme Court of the United States, as to the effect of inadequacy of consideration upon an issue of fraud and undue influence, we said: "In *Byers v. Surget,* 19 How., 311, the Supreme Court of the United States says: 'To meet the objection made to the sale in this case, founded on the inadequacy of the price at which the land was sold, it is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts, namely, unless such inadequacy be so gross as to shock the conscience, for this qualification implies necessarily the affirmation that, if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud.' And again, in *Hume v. U. S.,* 132 U. S., 411, 10 Sup. Ct., 136 (33 L. Ed., 393): 'It (fraud) may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under delusion, would make, on the one hand, and as no honest and fair man would accept, on the other.' Our Court, speaking through *Justice Brown,* so declares the law in reference to awards and other transactions. In *Perry v. Insurance Co.,* 137 N. C., 406, 49

S. E., 890, he says: 'Where there is a charge of fraud or par-
tiality made against an award, the fact that it is plainly and pal-
pably wrong would be evidence in support of the charge, entitled
to greater or less weight according to the extent or effect of the
error and the other circumstances of the case. There might be
a case of error in an award so plain and gross that a court or
jury could arrive only at the conclusion that it was not the result
of an impartial exercise of their judgment by the arbitrators.
*Goddard v. King,* 40 Minn., 164, 41 N. W., 659. The settled
rule, which is applicable not only to awards, but to other trans-
actions, is that mere inadequacy alone is not sufficient to set
aside the award; but if the inadequacy be so gross and palpable
as to shock the moral sense, it is sufficient evidence to be sub-
mitted to the jury on the issues relating to fraud and corruption,
or partiality and bias.' Where there is inadequacy of considera-
tion, but it is not gross, it may be considered in connection with
other evidence upon the issue of fraud, but will not, standing
alone, justify setting aside a contract or other paper-writing on
the ground of fraud."

The finding of the jury that the release was procured by fraud
and undue influence, rendered upon competent evidence, makes
it unnecessary to consider the effect of a valid release executed
by the intestate on the plaintiff's right of action.

The remaining question presented by the appeal is the effect
of the lapse of time between the injury to and the death of the
intestate.

The right of action in favor of the intestate to recover dam-
ages for personal injury was barred by the statute of limitations
of three years at the time of his death, and the question is pre-
sented, whether this can avail the defendant in an action by the
administrator to recover damages for death, the result of the
same injury.

Ordinarily, the bar of the statute is a good defense against
the administrator, if available against the intestate, but this is
because the administrator succeeds to the rights of the intestate,
derives his title from him, and is endeavoring to enforce a

right which belonged to him, and if no such relation exists in a given case, there would seem to be no good reason for admitting the defense.

The right to recover damages for personal injury belonged to the intestate, and terminated at his death, while the right to recover damages for wrongful death never belonged to him, and did not exist until death. A recovery in an action for personal injury belongs to the estate of the intestate, but a recovery for death is no part of the assets of the intestate.

The two rights of action have no common source, one being under the principles of the common law and the other the creature of statute. The administrator sues, not because of any privity between him and the intestate, but for the reason that the statute designates him as the party plaintiff, and he is substantially a statutory trustee.

This Court said, in *Hood v. Telegraph Co.,* 162 N. C., 94, in considering the statute conferring the right of action for death (Rev., sec. 59) : "Prior to the statute, which was first enacted in 1854, there was no right of action to recover damages for wrongful death (*Killian v. R. R.,* 128 N. C., 261), and as the right of action is conferred by the statute, it may designate who may sue. In 8 A. and E. Enc. Law, 887, the author says: 'The right of action for the death of any person caused by the wrongful act of a defendant is, with the isolated exceptions mentioned, purely statutory, and in all cases the statute must be looked to in determining to whom such right belongs.' When we turn to our statute, we find that the right of action is given to the executor, administrator, or collector; and there being an executor in this case, the plaintiff cannot sue. The statute designates the person to bring the action and determines the disposition of the recovery. As was well said by *Justice Walker* in *Hartness v. Pharr,* 133 N. C., 570: 'It must be borne in mind that whatever the varying forms of the statute may be, the cause of action given by them, and also by the original English statute, was in no sense one which belonged to the deceased person or in which he ever had any interest, and the beneficiaries under the law do not claim by, through, or under him;

and this is so, although the personal representative may be designated as the person to bring the action. *Baker v. R. .R.,* 91 N. C., 308. The latter does not derive any right, title, or authority from his intestate, but he sustains more the relation of a trustee in respect to the fund he may recover for the benefit of those entitled eventually to receive it, and he will hold it when recovered actually in that capacity, though in his name as executor or administrator, and though in his capacity as personal representative he may perhaps be liable on his bond for its proper administration. *Baker v. R. R., supra."* .

If there is no privity between the administrator and the intestate as to this cause of action, and the former succeeds to no rights of the other, it is illogical, as it appears to us, to hold that the failure of the .intestate to sue for personal injury will bar the right of the administrator to recover damages for death, when the first right of action could not pass to the administrator and the second did not exist until death.

It would be, in effect, an adjudication that the second cause of action was barred before it came into existence.

The weight of authority elsewhere *is,* we think, in support of the position that the action is not barred.

In *Robinson v. R. R.,* Appeal Cases (1892), p. 481, it was held by the Privy Council, on appeal from the Supreme Court of Canada, "that the Civil Code of Lower Canada does not make it a condition precedent to the right of action given by section 1056 to the widow of a person dying as therein mentioned, that the deceased's right of action should not have been extinguished in his lifetime by prescription under section 2262 (2). The death is the foundation of the right given by the former section, which is governed by the rule of prescription contained therein and is exempt from the rule of prescription which barred the claim of the deceased."

In *Hoover v. R. R.,* 46 W. Va., 268 (the statute of limitations in West Virginia being one year), the Court said: "It is claimed that, the injured having lost his right to sue by reason of the bar of the statute of limitations at the time of his death, the cause of action is thereby destroyed; both as to himself and

his administratrix; that death must find him with a ,cause of action legally enforcible, or she has none. This is undoubtedly true where the cause of action never existed, or is defeated by contributory negligence, or it has been compromised or released; for in such cases there is a complete want of or destruction by satisfaction of the cause, not merely of the right of action or remedy. *Dibble v. R. R.,* 25 Barb., 183; *Whitford v. R. R.,* 23 N. Y., 484; *Littlewood v. Mayor,* 89 N. Y., 24; *Fowlkes v. R. R.,* 5 Baxt., 663. In a certain class of cases the bar of the statute not only takes away the remedy, but destroys ·the cause of action. When the liability and the limitation is created by the same statute, the latter operates on the former, or liability, and not on the remedy alone. *The Harrisburg,* 119 U. S., 199 (7 Sup. Ct., 140). Generally speaking, however, the statute of limitations acts on the remedy, and takes away the right of action, and while it prevents relief, it does not destroy the cause of action, or the moral obligation on the negligent party to make good the injury caused by his default or neglect. . . . The first clause of the section, 'Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) . have entitled the party injured to maintain an action to recover damages in respect thereof,' plainly relates to the character of the injury, without regard to the question of time of suit or death. In other words, if the character of injury is such that the injured party could have at any time maintained a suit in relation thereto, his administrator could sue after his death. His cause of action is the negligent injury, but the administrator can have no cause of action until such negligent injury results in death. If such were not the case, why not provide merely that the decedent's cause of action survive to his personal representative, without making the death, coupled with the negligence that occasioned it, a new cause of action? And why not give the damages recovered to his estate, instead of exempting them from his debts and liabilities? . . . It is possible for learned and able counsel to give the statute a different construction, but the Court adopts what appears to be

CAUSEY *v.* R. R.

the more reasonable view, and this is, that an action lies, not-withstanding the death of the injured person did not occur until more than a year after the negligence which caused the injury occurred."

In *German Am. Trust Co. v. LaFayette Box Co.,* 98 N. E. Rep., 874, the appellate court of Indiana held that, "The foundation of the right given by Burns' Ann. St., 1908, sec. 285, providing that if one's death is caused by the wrongful act of another, his personal representative may sue therefor, if he, had he lived, might have sued for an injury for the same act, and the action shall be commenced in two years, is death; and the limitation for the action thereon is two years from the death, unaffected by decedent's action for his injuries being barred before his death."

In *L. and N. R. R. Co. v. Simrall's admr.,* 104 S. W. Rep., 1012, the Supreme Court of Kentucky said of this question: "It is strongly insisted for appellant that the court erred in sustaining appellee's demurrer to its pleas of the statute of limitations; it being the contention of counsel that no right of action exists for causing the death of a person where no right of action for the injury causing the death exists at the time the death occurs, and, further, that neither section 241 of the Constitution of Kentucky nor section 6 of the Kentucky Statutes of 1903 was intended to give a right of action for causing the death of a person, unless a right of action for the injury existed at the time of the death. The argument advanced by learned counsel for appellant is that, as section 2516, Ky. St. 1903, which provides, 'An action for an injury to the person of the plaintiff, or his wife, child, ward, apprentice, or servant, or for injuries to person, cattle or stock, by railroads or any company or corporation  . . .  shall be commenced within one year next after the cause of action accrued, and not thereafter,' applies to actions for injuries resulting in death, as well as those which do not result in death, the statute runs in each case from the time the injury was inflicted. It is further argued that the starting point is the same in each case, and that if, in the case of an injury subsequently resulting in the loss of a leg,

the statute runs from the date of the original injury, and not
from the loss of the leg, so, in the case of any injury subse-
quently resulting in death, the statute runs from the date of the
original injury, and not from the death. It is also urged that
any other construction of the statute than that contended for
by appellant would lead to injustice and oppression, for the rea-
son that if an administrator may maintain an action for caus-
ing the death of his intestate, where the death did not result
until the lapse of ten or fifteen years from the time the injury
was inflicted, then he may recover, although his intestate could
not do so, if living, for the injuries received, and that, too, very
probably after many of the witnesses have died or disappeared,
and after the circumstances surrounding the infliction of the
injury have faded from the memories of those by whom it was
witnessed. Though plausible, the foregoing argument is un-
sound. Hardships may result in exceptional cases from the
application of any statute or legal principle, however salutary
the operation of either in general. . . . In the first case,
the cause of action is asserted by the person injured, or his
administrator, and it arises out of and is for the injury received.
It therefore accrues from and at the time of the infliction of the
injury; hence the statute then begins to run. In the second
case, the cause of action does not accrue until the death of the
person injured occurs, because the action is not for the injury
sustained by the intestate, but for the death resulting from the
injury, which is an independent and distinct grievance, created
by statute, for which the personal representative alone may sue.
This being true, the statute of limitation begins to run at the
death and with the accrual of the cause of action. It is an indis-
putable rule that the statute of limitation can never begin to
run until the cause of action accrues."

In *Nestelle v. Nor. Pac. R. R.*, 56 F. R., 261, the plea of the
statute was denied, the Court holding: "The statute of limita-
tions begins to run against the statutory right of action for an
injury resulting in death only at the time the death occurs,
although that event takes place long after the time of receiving
the injury."

CAUSEY *v.* R. R.

In *W. and A. R. R. v. Bass,* 104 Ga., 390, the date of the injury was 21 February, 1891, and death ensued five years thereafter, and the Court says upon the question now before us: "Was the plaintiff's right of action barred by the statute of limitations because her suit was not filed within two years from the date her husband was injured? 'Actions for injuries done to the person shall be brought within two years after the right of action accrues.' Civil Code, sec. 3900. If the plaintiff's husband had sued for the injuries to his person, he must have brought his action within two years from the date such injuries were inflicted. The plaintiff's action, however, was not for injuries done to the person of her husband. She had no right under the law to sue for such injuries; no one except the husband himself could maintain an action for them. If, however, such injuries resulted in his death, then, under section 3828 of the Civil Code, a right of action accrued to her. That section provides that a widow may recover for the homicide of her husband, and plaintiff's suit is based upon the cause of action therein given her. This statute does not profess to revive the cause of action for the injury to the deceased in favor of his widow, nor is such its legal effect, but it creates a new cause of action, in favor of the widow, unknown to the common law. The right of action given by the statute is for the *homicide* of the husband in all cases where the death results from a crime, or from criminal or other negligence, and is founded on a new grievance, namely, his homicide, and is for the injury thereby sustained by the widow and children, to whose exclusive benefit the damages must ensue, as, under section 3829 of the Civil Code, 'in the event of a recovery by the widow, she shall hold the amount recovered subject to the law of descents, as if it had been personal property descending to the widow and children from the deceased, and no recovery had shall be subject to any debt or liability of any character of the deceased husband.' The widow's right of action for the wrongful homicide of her husband cannot exist at all until he is actually dead, and she cannot, as a matter of course, bring suit before her cause of action comes into life. The statute of limitation begins to run from

166—2

the time the right of action accrues, that is, as soon as the party is entitled to apply to the proper tribunal. Angell on Lim. (6 Ed.), sec. 42. It is clear, therefore, that the statute of limitations which began to run against the husband from the date his right of action accrued, namely, the time the injuries were inflicted, could not be pleaded against the plaintiff in a suit for his homicide, alleged to have been caused by the same injuries; because she had no right of action until her husband died, and the statute could not run against a right of action before it came into existence."

In *R. R. v. Clarke,* 152 U. S., 230, which was an action to recover damages for death, the railroad relied upon the rule of the common law, obtaining in prosecutions for murder, that death must ensue within a year and a day. The Court repudiated the defense, and the reasoning based upon a construction of the statute giving a right of action for death, strongly supports our view. The Court says: "The statute, in express words, gives the personal representative two years within which to sue. He cannot sue until the cause of action accrues, and the cause of action given by the statute for the exclusive benefit of the widow and children or next of kin cannot accrue until the person injured dies. Until the death of the person injured, the 'new grievance' upon which the action is founded does not exist. To say, therefore, that where the person injured dies within one year and *two* days after being injured, no action can be maintained by the personal representative, is to go in the face of the statute, which makes no distinction between cases where death occurs within less than a year and a day from the injury, and where it does not occur until after the expiration of one year and a day. Although the evidence may show, beyond all dispute, that the death was caused by the wrongful act or omission of the defendant, and although the action by the personal representative was brought within two years after the death, yet, according to the argument of learned counsel, the action cannot be maintained if the deceased happened to survive his injuries for a year and a day. We cannot assent to this view. Was the death, in fact, caused by the wrongful act

or omission of the defendant? That is the vital inquiry in each case. The statute imposes no other condition upon the right to sue. The court has no authority to impose an additional or different one. If death was so caused, then the personal representative may sue at any time within two years from such death."

The diligent and learned counsel for the defendant has collected all of the cases holding to the contrary.

*Robinson v. R. R.,* 54 A. and E. R. R. Cases, 49, by the Supreme Court of Canada, was, as we have seen, reversed on appeal.

The two Alabama cases, *Williams v. R. R.,* 158 Ala., 398, and *Suell v. Derricott,* 161 Ala., 259; and *R. R. v. Allen,* 192 F. R., 480, by the Circuit Court of Appeals, are based upon the construction of the Alabama statute conferring a right of action for death, which is different from ours in that the right there is not new and independent, but is a survival of the right of action of the intestate.

In the first of these cases the Court says: "The object of the statute (section 1751, Code 1896), as we understand it, was to continue the cause of action which the person .injured had— and which he had not enforced, but might have enforced had not death intervened—for the benefit of the legal distributees of his estate; and to enable the distributees to obtain their damages, resulting from the same primary cause, and not to create an entirely new and additional right of action, although the mode of estimating the damages might be entirely different from that employed had the action been brought by the employee. 'In the view we take of the statute, the right to be enforced is not an original one, springing into existence from the death of the intestate, but is one having a previous existence, with the incident of survivorship, derived from the statute itself.'"

The Circuit Court of Appeals adopts this construction, the injury causing death in that case having occurred in Alabama.

*Kelliher v. R. R.,* 138 N. Y. Supp., 894, is in point, but it is

now pending on appeal in the Court of Appeals of New York.

We are, therefore, of opinion, on reason and authority, that the cause of action is not barred by the statute of limitations.

No error.