Kathy H. **WILLIAMS**, Administratrix of **Richard Earl Williams,** Plaintiff,

v.

**GENERAL MOTORS CORPORATION,** Defendant.

No. C–74–122–G.

United States District Court, M. D. North Carolina, Greensboro Division.

May 2, 1975.

---

William D. Caffrey and Lindsay R. Davis, Jr., of Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., for plaintiff.

Stephen Millikin of Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for defendant.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This matter came on for hearing before the Court on March 21, 1975 on defendant's motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Counsel for plaintiff conceded in open court that plaintiff no longer seriously pursues the breach of warranty claim against the defendant and, therefore, the defendant's motion for summary judgment was based solely on the contention that the plaintiff's negligence claim was barred, as a matter of law, by the North Carolina statutes of limitation. The Court has jurisdiction of this action under 28 U.S.C. § 1332.

Plaintiff is the administratrix of the estate of her deceased son, Richard Earl Williams, who was killed on April 19, 1972, when a 1966 Chevrolet which he was driving was involved in a single car accident. Plaintiff contends that Williams was driving along a public road in Greensboro, North Carolina, when suddenly, without warning, and because of defects in its design and manufacture, the automobile gained speed rapidly and uncontrollably and left the road, crashing into a power pole and brick wall. The automobile in question was sold by the defendant to Friendly Chevrolet Company, Inc., Reidsville, North Carolina, on or about December 28, 1965. From that point until its destruction on April 19, 1972, the automobile had various owners. George W. Wingfield purchased the car from Friendly Chevrolet on March 16, 1966, and sold it to William F. McCollum on January 2, 1968. McCollum traded the automobile to Zane-Waters Pontiac, Inc., Greensboro, North Carolina, on June 30, 1970, and the plaintiff's son purchased it from Zane-Waters Pontiac on July 10, 1970. Thus, counting the dealer, the deceased was actually the fifth owner of the car after it was sold by the defendant.

Defendant argues that the statute of limitations has run as to the plaintiff's action and appears to base his argument on two grounds: (1) Defendant contends that, since the automobile was manufactured in 1965 and originally sold in 1966, the plaintiff's right of action as administratrix accrued at that time and thus became barred in 1968 by virtue of the two-year wrongful death statute of limitations contained in N.C. G.S. § 1–53(4). (2) Although its argument is not entirely clear, defendant also apparently contends that since the automobile was sold in 1966, any right of action which the deceased might have had was barred after three years because of the statute of limitations for personal

injury contained in N.C.G.S. § 1–52(5). This argument is that since the statute began to run at the time of the original sale, the deceased would have had no cause of action at the time of his death by virtue of N.C.G.S. § 1–52(5) and that, therefore, the deceased's administratrix could bring no action under N.C.G.S. § 28–173. At the root of both arguments is defendant's basic contention that any action against it accrued at the time the Chevrolet was first sold in 1966.

An administrator in North Carolina seeking wrongful death damages on behalf of a deceased is governed by N.C.G.S. § 28–173:

> When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their executors, administrators, collectors or successors shall be liable to an action for damages, to be brought by the executor, administrator or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default, causing the death, amounts in law to a felony. . . .

N.C.G.S. § 1–53(4) requires that the administrator bring his wrongful death action within two years after the death of the deceased.[1] Plaintiff's intestate was killed on April 19, 1972, and this action was commenced on April 18, 1974. Therefore, the plaintiff has instituted her action within the time required by N.C.G.S. § 1–53(4).

However, reasoning from the standpoint of N.C.G.S. § 28–173 and, for the moment disregarding the implications of

Causey v. Seaboard Air Line R. Co., 166 N.C. 5, 81 S.E. 917 (1914), an administrator may only bring an action if the death was caused by a wrongful act or omission, which "if the injured party had lived, [would] have entitled him to an action for damages therefor, . . . ." Therefore, the central issue to be determined becomes whether, at the time of his death, Richard Earl Williams, would have had a cause of action against the defendant, General Motors Corporation, for alleged defects in design and manufacture of his automobile if he had not been killed.

N.C.G.S. § 1–52(5) requires that an action "[f]or criminal conversation, or for any other injury to the person or rights of another . . ." must be brought within three years. If Richard Earl Williams would have had a cause of action against the defendant if he had been injured instead of killed, his administratrix has the right to maintain the action pursuant to the provisions of N.C.G.S. § 28–173 and may bring the action as one for wrongful death. As noted above, defendant also appears to argue that the three-year statute of limitations began to run at the time of the first sale of the Chevrolet in 1966. Thus, under that reasoning, the statute of limitations ran on this cause of action in 1969 and Richard Earl Williams had no cause of action against General Motors Corporation on April 19, 1972. The defendant further contends that since the deceased had no cause of action at the time of his death, his administratrix also has no cause of action pursuant to N.C.G.S. § 28–173. Defendant's argument is incorrect because it misinterprets the decisions of the North Carolina Supreme Court as to when a cause of action accrues for purposes of the statute of limitations.

---

1. None of the cases cited by the defendant stand for the proposition that the two-year statute of limitations contained in N.C.G.S. § 1–53(4) can begin to run at any other time than the death of the deceased and this Court has found none which endorse such a rule. The clear import of N.C.G.S. § 1–53(4) is that the administrator has two years from the death of the deceased to bring a wrongful death action.

## I. North Carolina Supreme Court—Defining "Accrue"

The basic question on this point is whether, under North Carolina law, a cause of action which is limited by N.C. G.S. § 1–52 accrues at the time of sale of a product so as to bar an individual from maintaining an action for negligent manufacture when that individual at no time had a contractual relationship with the manufacturer and had suffered no injury, however slight, which would have entitled him to bring an action for even nominal damages for negligent manufacture of the product. In this case, if the right of action for negligence in design and manufacture of the Chevrolet accrued at the time of sale in 1966 and thus ceased to exist in 1969, Richard Earl Williams in 1970 bought an automobile which, although only four years old, afforded its owner no right of redress no matter how negligently it was manufactured. At first glance, that is exactly the result which appears to be mandated by the Supreme Court of North Carolina.

Under N.C.G.S. § 1–15(a), "[c]ivil actions can only be commenced within the periods prescribed in this chapter [which contains N.C.G.S. § 1–52], *after the cause of action has accrued,* except where in special cases a different limitation is prescribed by statute." (Emphasis added). The task of defining the term "accrue" in actions governed by N.C.G.S. § 1–52 was left to the North Carolina courts. The Supreme Court of North Carolina has rather consistently ruled as it did in Jewell v. Price, 264 N. C. 459, 142 S.E.2d 1, 3 (1965), that:

> The accrual of the cause of action must . . . be reckoned from the time the first injury, however slight, was sustained. (citation omitted) It is unimportant that the actual or the substantial damage does not occur until later if the whole injury results from the original tortious act. (cita-

tion omitted) "(P)roof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the *damage* is not the cause of action," (citation omitted). It is likewise unimportant that the harmful consequences of the breach of duty or of contract were not discovered or discoverable at the time the cause of action accrued.

This has been the general rule concerning accrual in North Carolina whether the action was based on contract or tort. Sellers v. Friedrich Refrigerators, Inc., 283 N.C. 79, 194 S.E.2d 817 (1973); Matthieu v. Piedmont Natural Gas Co., 269 N.C. 212, 152 S.E.2d 336 (1967); Thurston Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 128 S.E.2d 413 (1962); Shearin v. Lloyd, 246 N.C. 363, 98 S.E.2d 508 (1957); Hooper v. Carr Lumber Co., 215 N.C. 308, 1 S.E.2d 818 (1939); Employers Commercial Union Co. v. Westinghouse Corp., 15 N.C. App. 406, 190 S.E.2d 364 (1972); Jarrell v. Samsonite Corp., 12 N.C.App. 673, 184 S.E.2d 376 (1971), cert. denied, 280 N.C. 180, 185 S.E.2d 704 (1972); State v. Cessna Aircraft Corp., 9 N.C. App. 557, 176 S.E.2d 796 (1970); Land v. Neill Pontiac, Inc., 6 N.C.App. 197, 169 S.E.2d 537 (1969). *See also* Green v. M.T.D. Products, Inc., 449 F.2d 757 (4th Cir. 1971). In opposition to this rule is Hocutt v. Wilmington & W. R. Co., 124 N.C. 214, 32 S.E. 681 (1899). The result has been that, in products liability cases, when a purchaser bought a product, any cause of action which he might have had against the manufacturer for negligent construction accrued at the time of sale, since at that time there was some "slight" injury. Thus, under that rule, if the owner of a product was injured three years and one day after its purchase because of its negligent manufacture, he was barred from all relief even though the defect in the product was not discoverable until it caused the injury.

The North Carolina General Assembly in 1971 changed this harsh result when it passed N.C.G.S. § 1–15(b):

> Except where otherwise provided by statute, a cause of action, *other than one for wrongful death*, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damages not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed 10 years from the last act of the defendant giving rise to the claim for relief. (Emphasis added).

N.C.G.S. § 1–15(b), in essence, overruled all of the prior case law which had held that a cause of action for defective manufacture accrued at the time of sale. But although the legislature apparently intended to extend the statute of limitations in the case of an individual who is injured because of a negligently manufactured product, it for some unexplained reason did not intend to extend this same right to his administrator if he is killed instead of injured. Since N.C.G.S. § 1–15(b) applies to "a cause of action, *other than one for wrongful death* . . . ," (Emphasis added) the plaintiff in this action cannot rely on the statute even though the deceased could have done so if he had been injured instead of killed. Therefore, except for the phrase deleting wrongful death actions, the plaintiff could have contended that since the deceased would have had a cause of action under N.C.G.S. § 1–15(b) if he had lived, the plaintiff as administratrix is entitled to bring the action for the deceased's wrongful death pursuant to N.C.G.S. § 28–173.

However, in light of this Court's reading of the North Carolina case law, Richard Earl Williams had a viable cause of action at the moment of his death even under the North Carolina law prior to passage of N.C.G.S. § 1–15(b). With the notable exceptions of Hooper v. Carr Lumber Co., *supra*; Jarrell v. Samsonite Corp., *supra*, and State v. Cessna Aircraft Corp., *supra*, the North Carolina cases which have expressed the general rule that the statute starts to run when the first injury, however slight, occurs even if the injury is not discoverable, have involved fact situations in which the plaintiff *himself* was the purchaser of the product, a party to the original contract or, as in malpractice or land damage cases, the original victim of the initial tort. In such cases, it can be rationalized, although by no insignificant stretch of the imagination, that the plaintiff himself was the injured party at the time the wrong was committed and, therefore, had the right at that time to bring an action if he had indeed discovered the wrong committed against him. However, even under the decisions of the North Carolina Supreme Court prior to the enactment of N.C.G.S. § 1–15(b), before the statute of limitations could begin to run against a party, it was necessary that the party have at least a right to bring an action for nominal damages at the time the act was done which later caused the injury. In Jewell v. Price, 264 N.C. 459, 142 S.E.2d at 3, the court pointed out that "[w]here there is either a breach of an agreement or a tortious invasion of a right for which the party aggrieved is entitled to recover even nominal damages, the statute of limitations immediately begins to run against the party aggrieved . . . ." This idea was even more succinctly stated in the cases of Thurston Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 128 S.E.2d at 415, and Shearin v. Lloyd, 246 N.C. 363, 98 S.E.2d at 511, which espouse the rule that "'[i]n general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises * * *.'" Therefore, the statute of limitations, even under North Carolina Supreme Court rul-

ings prior to N.C.G.S. § 1–15(b), cannot begin to run against an aggrieved party who under no circumstances could have maintained an action at the time the wrongful act was committed *until* that aggrieved party becomes entitled to maintain an action. In this case, Richard Earl Williams had absolutely no standing in 1966 to sue General Motors Corporation for negligent design and manufacture of a car which he did not then own *and would not own* for over four years. Thus, the statute could not have begun to run against Williams in 1966. Neither could the statute have started running on July 10, 1970, the day on which Williams purchased the automobile in question, since there was not then nor had there ever been any contractual relationship between Williams and General Motors Corporation, and, at that point, Williams had suffered no injury, however slight, which would have entitled him to bring an action for even nominal damages for negligent manufacture and design of the automobile. Since Williams' only avenue of relief against General Motors Corporation would have been for the negligent manufacture and design of the automobile, his cause of action could not and did not accrue until the accident on April 19, 1972. Consequently, Williams, at the time of his death was entitled to maintain an action against the defendant. Therefore, under the provisions of N.C.G.S. § 28–173, plaintiff, as Williams' administratrix, is entitled to bring the same action that Williams could have brought.

The Court is aware that the cases of Hooper v. Carr Lumber Co., *supra*; Jarrell v. Samsonite Corp., *supra*; and State v. Cessna Aircraft Corp., *supra*, do not square with its interpretation of the North Carolina case law. In each of those cases, it was held that the statute of limitations had run on the plaintiff even though the plaintiff had not been in a position to maintain an action at the time the actual tortious act was committed. In *Hooper*, the defendant in its logging operations built trestles across a river and placed logs and debris in the river so as to cause water to back up on plaintiff's land and damage it. The court, in ruling that the plaintiff's cause of action accrued at the time the defendant committed the acts which clogged the river and that the statute had run by the time the plaintiff brought his action even though plaintiff could not have sued the defendant at the time of the initial wrongful conduct, stated that:

> While the plaintiff could not have brought and maintained his action until some injury to his property had occurred by reason of the alleged negligent acts or omissions of duty of the defendant, it does not follow that the time of the injury marks the beginning point of the running of the statute of limitations.

215 N.C. 308, 1 S.E.2d at 820.

In so holding, the court in *Hooper* ignored its decision in Hocutt v. Wilmington & W. R. Co., *supra*, forty years earlier. In *Hocutt*, the plaintiff suffered injury to his property which occurred when defendant's digging of ditches diverted the natural flow of a stream onto plaintiff's land. Plaintiff's action was not instituted within the statute of limitations if the action accrued at the time of digging of the ditches but was within the statute if the action accrued at the time of his injury. The court there held that plaintiff's cause of action accrued at the time of his injury since he had no cause of action at all against the defendant before that time:

> While the plaintiff might, under certain circumstances, have enjoined the commission of an act that threatened irreparable injury, he could not have maintained an action for damages that he had not sustained, and might never sustain. It is well settled that the injury is the cause of action, and that no statutes of limitation can begin to run before the cause of action accrues. This principle is the only just basis for any statutes of lim-

itation which otherwise could be subversive of common right. They are statutes of repose, intended to force all men to litigate their claims within a reasonable time, while the facts are yet fresh in the memory of living witnesses, and before the probable loss or destruction of important papers. It has been well said that by such statutes the law is constantly building up around the rights of the citizen muniments of title to take the place of those naturally decaying under the touch of Time's effacing finger. But why force a man to sue when he can recover nothing. The principle is well settled.

124 N.C. 214, 32 S.E. at 682–83.

The court in Thurston Motor Lines, Inc. v. General Motors Corp., *supra*,[2] noted a conflict in the *Hocutt* and *Hooper* decisions but did not endorse or reject either ruling since in *Thurston*, the plaintiff itself was the party who bought the defective product from the defendant and who, therefore, technically had some "slight" injury at the time of sale sufficient to start the statute of limitations running. It appears, moreover, that the Supreme Court of North Carolina has yet to meet this particular issue head-on and resolve the conflict in its own decisions.

The North Carolina Court of Appeals, however, did endorse the *Hooper* decision in State v. Cessna Aircraft Corp., *supra*. There one Ernest W. Ross and one Francis M. Beam bought an airplane from defendant in 1966 and crashed it into a building owned by the State of North Carolina in 1967 when a piston and connecting rod in the plane's engine broke. The State instituted its action against the plane's manufacturer within three years of the accident but more

than three years after the sale of the aircraft. The North Carolina Court of Appeals held that the statute began to run at the time of the sale of the aircraft even though the State was not the purchaser, citing *Hooper* for the principle that it makes no difference that the plaintiff had no right of action at the time of the original wrongful act and completely ignoring *Hocutt*. The Court of Appeals approved the same rule in Jarrell v. Samsonite Corp., *supra*, again endorsing *Hooper* and ignoring *Hocutt*.

As can be seen from the previous discussion, the courts of North Carolina have failed to attain any degree of consistency in ruling on the question and, therefore, it has fallen upon this Court to predict how the North Carolina Supreme Court would rule if presented directly with this specific question. The quotations cited above from Jewell v. Price, *supra*; Thurston Motor Lines, Inc. v. General Motors Corp., *supra;* and Shearin v. Lloyd, *supra*, indicate that if the Supreme Court of North Carolina were today to face this issue, it would hold, under the law prior to enactment of N.C.G.S. § 1–15(b), (1) that " '[i]n general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises * * *,' " and (2) that, therefore, the statute cannot run against a plaintiff who under no circumstances was in a position to bring the action at the time of the original wrongful act.

This Court declines to follow the North Carolina Court of Appeals decisions in *Cessna* and *Jarrell* for three reasons. First, those decisions endorsed the *Hooper* case without noting the contrary opinion in *Hocutt* and, therefore, do not appear to have fully considered the rulings of the North Carolina Su-

---

2. "Whether this Court, in a case where there is *no injury to plaintiff or invasion of his rights at the time of defendant's negligent act or omission,* would follow Hooper v. Carr Lumber Co., supra, need not be decided on this appeal. Decision on this appeal, as in Shearin v. Lloyd, supra, is based on the

ground that plaintiff did sustain injury and his rights were invaded at the time of the alleged negligent acts and omissions of defendants." (Emphasis added). Thurston Motor Lines v. General Motors Corp., 258 N.C. 323, 128 S.E.2d at 416.

preme Court on the question. Second, they have failed to recognize that the North Carolina Supreme Court has, in the above-quoted decisions of *Jewell, Thurston,* and *Shearin,* acknowledged that a cause of action can accrue only when the party against whom the statute of limitations will be running has standing to bring at least an action for nominal damages.

Third, under the circumstances here presented, this Court is bound only by the decisions of the highest court of the State of North Carolina. The United States Supreme Court in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held that a federal court in a diversity action must apply the law of the state in which it sits and indicated that the proper law to be followed is that handed down by the highest court of the state. However, in a rash of decisions in 1940, the Supreme Court went further and ruled that, in some circumstances, a federal court must apply the law of the state as interpreted by courts sitting at a lower level than the highest state court. The general rule was stated in Fidelity Union Trust Co. v. Field, 311 U.S. 169, 178, 61 S.Ct. 176, 178, 85 L.Ed. 109, 113 (1940):

> An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, *in the absence of more convincing evidence of what the state law is,* should be followed by a federal court in deciding a state question. (Emphasis added).

West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940); Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940).

Under the provisions of 28 U.S.C. § 1652, whose since repealed forerunner, 28 U.S.C. § 725, was construed in *Erie:*

> The *laws* of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. (Emphasis added).

Thus, federal courts must apply the "laws" of the states rather than simply the law handed down from the states' highest courts. West v. American Telephone and Telegraph Co., *supra.*

■ However, when there is a decision of the state's highest court which conflicts with the ruling by the lower state court, a federal court is not obligated to follow the law as interpreted by the lower court. Fidelity Union Trust Co. v. Field, 311 U.S. at 178, 61 S.Ct. 176, 85 L.Ed. at 113; Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, 416 n. 3 (1972). Here, that test is met because of the conflict between the North Carolina Court of Appeals decisions in *Cessna* and *Jarrell* and the North Carolina Supreme Court decision in *Hocutt. Hocutt* has never been officially overruled in spite of the contrary holding in *Hooper.* This Court, as noted above, is inclined to believe that the quotations cited from *Jewell, Thurston,* and *Shearin* to the effect that a right of action accrues as soon as the right to institute a suit arises, indicates that the North Carolina Supreme Court considers the law of North Carolina on this question to be embodied within *Hocutt* rather that within *Hooper.* Thus, under the standard enunciated in *Fidelity* and accompanying cases, this Court is of the opinion that the foregoing constitutes "more convincing evidence of what the state law is" than the intermediate state court decisions of *Cessna* and *Jarrell* and, therefore, declines to follow them. The Supreme Court of North Carolina did, to be sure, deny certiorari in *Jarrell,* but this is susceptible of a number of interpretations and does not

necessarily mean an endorsement of the *Hooper* principle.

The Court is aware that, under its interpretation of the North Carolina law in this matter, the liability of a manufacturer for a negligently constructed product could conceivably continue indefinitely as long as the product is in existence. However, in situations in which the plaintiff is injured but not killed, N.C.G.S. § 1–15(b) cuts off the manufacturer's liability at "10 years from the last act of defendant giving rise to the claim for relief." Nevertheless, under this ruling, the manufacturer's liability may remain open-ended in a situation in which an action is brought by an administrator of an individual who is killed instead of injured because of the defective manufacture of that product. Since N.C.G.S. § 1–15(b) is not applicable to wrongful death actions, the liability of the manufacturer in such a case is not limited to ten years. It is highly unlikely that the North Carolina General Assembly anticipated such a result when it excluded wrongful death actions from N.C.G.S. § 1–15(b) but whether such action should or should not be included is a legislative prerogative.

II. *Causey v. Seaboard Air Line R. Co.*

As an alternative ground, plaintiff urges that her cause of action is not barred by the statute of limitations because of the North Carolina Supreme Court's holding in Causey v. Seaboard Air Line R. Co., *supra*. Causey, plaintiff contends, constitutes authority for allowing the deceased's administratrix to bring this action. In *Causey*, the deceased was injured as a result of the alleged negligence of the defendant on December 1, 1903, but did not die of those injuries until June 7, 1912. Although the deceased's action for personal injuries was barred by the three-year statute of limitations at the time of his death, the court held that his administrator was not so barred. The court reasoned that:

> The right to recover damages for personal injury belonged to the intestate, and terminated at his death, while the right to recover damages for wrongful death never belonged to him, and did not exist until death. A recovery in an action for personal injury belongs to the estate of the intestate, but a recovery for death is no part of the assets of the intestate. The two rights of action have no common source, one being under the principles of the common law, and the other the creature of statute. The administrator sues, not because of any privity between him and the intestate, but for the reason that the statute designates him as the party plaintiff, and he is substantially a statutory trustee.

> . . . . . .

> If there is no privity between the administrator and the intestate as to this cause of action, and the former succeeds to no rights of the other, it is illogical, as it appears to us, to hold that the failure of the intestate to sue for personal injury will bar the right of the administrator to recover damages for death, when the first right of action could not pass to the administrator and the second did not exist until death. It would be, in effect, an adjudication that the second cause of action was barred before it came into existence.

166 N.C. 5, 81 S.E. at 919–20.

*Causey* has never been overruled and thus apparently remains as the law of North Carolina to this day. However, this Court finds it exceedingly difficult to square *Causey* with N.C.G.S. § 28–173 which, as pointed out above, states that an administrator can bring a wrongful death action "such as would, if the injured party had lived, have entitled him to an action for damages therefor." *Causey* holds that an administrator may bring an action even though the deceased would have been barred at the time of his death from bringing the action while N.C.G.S. § 28–173, on the other hand, requires that the cause of action, in order to be brought by the ad-

ministrator, must have been one which the deceased had the right to bring at the time of his death. The above-quoted phrase from N.C.G.S. § 28–173 was in basically the same form in 1914 when *Causey* was handed down that it is today and thus it cannot be said that the conflict exists because the North Carolina Supreme Court was construing a different statute. This Court is bound to follow the North Carolina Supreme Court's interpretations of North Carolina statutes and would have faithfully endeavored to follow *Causey* had it been necessary, in spite of the conflict. However, the Court bases its decision on the reasoning stated in Part I of this opinion and, therefore, find its unnecessary to rely on *Causey* in holding that the plaintiff's cause of action is not barred by the statute of limitations.

For the aforementioned reasons, the Court holds that the plaintiff's cause of action in this case is not barred by the statute of limitations. As a result, the defendant's motion for summary judgment should be denied. Additionally, the Court is of the opinion that this Order involves a controlling question of law as to which there is obviously substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. This Order is, therefore, certified to the Court of Appeals for the Fourth Circuit pursuant to 28 U.S.C. § 1292(b).

Now, therefore, it is hereby ordered that the defendant's motion for summary judgment be, and the same is hereby, denied. It is further ordered that all proceedings herein be stayed for ten days from date of entry of this Order. If, within such ten days, the defendant shall apply to the United States Court of Appeals for the Fourth Circuit for permission to appeal from this Order, the proceeding shall be stayed pending determination of such application, or if it is allowed, pending determination of an appeal.